David P. SCHEPPS and Theresa L.
Schepps, Appellants (Plaintiffs),

v.

Steve R. HOWE and Jerri Jean Howe,
Appellees (Defendants).

No. 5826.

Supreme Court of Wyoming.

June 22, 1983.

C. Edward Webster II, Cody, for appellants.

William W. Harden, Casper, for appellees.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE, and BROWN, JJ.

THOMAS, Justice.

In this case the court is confronted with two questions concerning the rights of purchasers of residences. The first question relates to the right to recover in fraud for misrepresentations made subsequent to the execution of a contract for the sale of the residence. The second involves the right of a purchaser to claim a warranty of habitability when the house is constructed by the seller for his own occupancy and the seller is not a professional builder-developer. In granting a summary judgment in favor of the seller the district court held that any false representation could not have been relied upon by the buyers to induce them to purchase the property since any such representations were made after a binding contract to purchase the property was formed. The district court further held that no warranty of habitability attaches to the sale of a home by the builder, if the seller who constructed the home is an amateur builder who is not intending to engage in a commercial venture at the time the home is built. We shall affirm the district court, but in so doing we will hold that in this case the buyers waived any possible warranty of habitability, and, although we are skeptical of the ruling by the district court, we will defer for another occasion the question of whether a warranty of habitability could attach under these circumstances.

In urging their position in this court the appellants (the buyers) phrase the issues presented as follows:

"1. Did the district court of Natrona County err in granting summary judg-

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

ment in favor of appellees holding that appellees were not responsible for not disclosing any defects in the home to be purchased by appellants. Were appellees exempt from responsibility for fraudulently misrepresenting the manner in which the home was constructed because the parties had previously entered into a purchase offer, acceptance and receipt agreement and appellants had made an earnest money deposit.

"2. Did the district court of Natrona County err in granting a summary judgment in favor of appellees and against appellants holding that an amateur builder of a home is exempt from constructing a home in a workmanlike manner and further exempt from an implied warranty of habitability and workmanship."

In defending the appeal the appellees (the sellers) rely upon traditional grounds for protecting summary judgments. In so doing they state the pertinent issues as follows:

"A. Whether or not the Court erred in finding there was no genuine dispute as to any material fact regarding Plaintiff's allegations of fraud?

"B. Whether or not the Court erred in finding there was no dispute as to any material fact regarding Plaintiff's allegation of breach of implied warranty of habitability and negligent construction?"

 We begin by noting that in considering the propriety of the grant of summary judgment this court views the record in the light most favorable to the party against whom the summary judgment was entered, giving to that party the benefit of all favorable inferences which can be drawn from any of the materials which are submitted in support of or in opposition to the motion. *Hyatt v. Big Horn School District No. 4,* Wyo., 636 P.2d 525 (1981); *Strang*

*Telecasting, Inc. v. Ernst,* Wyo., 610 P.2d 1011 (1980); *Weaver v. Blue Cross-Blue Shield of Wyoming,* Wyo., 609 P.2d 984 (1980); and *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976). We also note that in an appeal in a case in which a summary judgment has been granted by the district court, our task is identical to that of the district court. *Reno Livestock Corporation v. Sun Oil Company,* Wyo., 638 P.2d 147 (1981); *Hyatt v. Big Horn School District No. 4,* supra; *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980); and *Centrella v. Morris,* Wyo., 597 P.2d 958 (1979). Whether the district court properly awarded the summary judgment to the moving party depends upon the dual findings that there is no genuine issue of material fact, and that the prevailing party is entitled to judgment as a matter of law. *Reno Livestock Corporation v. Sun Oil Company,* supra; *Weaver v. Blue Cross-Blue Shield of Wyoming,* supra; *Laird v. Laird,* Wyo., 597 P.2d 463 (1979); *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975). According to our holdings a fact is material if proof with respect to it would have the effect of establishing or refuting one of the essential elements of a cause of action or a defense asserted by one of the parties. *Hyatt v. Big Horn School District No. 4,* supra, 636 P.2d at 528; *Laird v. Laird,* supra, 597 P.2d at 466; *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977); and *Johnson v. Soulis,* supra, 542 P.2d at 872. The party submitting the motion for the summary judgment has the burden of establishing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Hyatt v. Big Horn School District No. 4,* supra, 636 P.2d at 528; *Weaver v. Blue Cross-Blue Shield,* supra, 609 P.2d at 987; and *Laird v. Laird,* supra, 597 P.2d at 466. When the moving party supports his motion by affidavit as provided in Rule 56(e), W.R.C.P.,[1] and supplements

---

1. Rule 56(e), W.R.C.P., provides:

"(e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule

the affidavits as provided in that rule, the other party may not rest upon the mere allegations or denials of his pleading. He is required to respond, by affidavit or otherwise, and he must set forth specific facts which show that there is a genuine factual issue for trial. *Hyatt v. Big Horn School District No. 4,* supra; *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981); *Keller v. Anderson,* Wyo., 554 P.2d 1253 (1976); and *Newton v. Misner,* Wyo., 423 P.2d 648 (1967).

Having followed the foregoing principles we conclude that certain facts in this case are not in dispute. The appellees, Steven Howe and his wife, Jerri, were residents of Park County, Wyoming, and they were engaged in the construction of their own home in Park County when Steven Howe accepted a job offer in Casper, Wyoming. The unfinished house was being constructed from plans obtained from Lumber Enterprises, Inc., of Bozeman, Montana. Although some trained assistance was obtained with respect to certain aspects of the construction, most of the construction work including the wiring, plumbing, and erection of the walls was done by Steven Howe, who had no previous experience in the construction trade. All work on the house was suspended when Steven Howe accepted the offer of employment in Casper, Wyoming.

At that juncture the property was listed for sale with the Pronghorn Agency, Inc., of Cody, Wyoming, which acted as the agent for the sellers until the property was sold to the appellants (the Schepps). The uncompleted house was placed on the market, that is it was listed, advertised and sold, on an "AS IS" basis. It was understood that the materials which were required to finish the construction would be furnished to any buyers as a part of the transaction. The cash asking price for this partially completed residence and the property on which it was located declined over the time between listing and sale.

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts

The appellants first saw the home when it was shown to them by the realtor without the appellees being present. On September 6, 1979, the appellants signed an "Offer, Acceptance & Receipt (Specific Performance Contract) (Residential)" which was accepted and signed later on the same day by the appellees. The purchase price which the appellants offered was $82,500 subject to only a contingency of obtaining financing. The receipt of $500.00 as earnest money and part payment was acknowledged by the broker-agent upon execution of the offer. The parties then met for the first time on the date of closing, September 11, 1979. David Schepps, in his affidavit, asserts that on that occasion he was assured by Steven Howe that the house had been built by qualified contractors and was complete structurally except for some finish work. In addition the appellants state by way of affidavit that they were assured that the cost of finishing the house according to a written estimate was less than $6,000; that the house complied with the building and electrical codes and had passed inspection by a qualified inspector; and that the electrical and plumbing work had been done by competent professionals. Not long after they took possession the appellants began to experience problems with the home. A portion of the roof blew off. They then had the property inspected by a licensed building contractor, and the inspector informed the appellants that the building would not pass the state building code inspection. He also advised them that the state electrical inspector should be called to examine the house. In making a subsequent inspection the electrical inspector noted 52 violations of the state electrical code, and that inspector also advised the appellants not to use the heating system in the house until it had been corrected because of the possibility of a fire. The plumbing in the house collapsed and had to be completely redone. Numerous other problems arose as a result of the poor construction of the home, all of which

> showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him."

required correction at great expense to the appellants.

The appellants began this present action on February 10, 1981. The appellees answered and affirmatively alleged a counterclaim for malicious prosecution. The answer generally denied the allegations of the appellants' complaint, and following discovery the appellees moved for summary judgment pursuant to Rule 56, W.R.C.P. Summary judgment was granted by the district court on January 22, 1982. The summary judgment did not treat with the counterclaim for malicious prosecution, however, and when the case first was appealed the appeal was dismissed because the judgment was not final. That matter was corrected upon remand to the district court, and the summary judgment is now before this court upon appeal.

In two separate decision letters the district court comments:

"The undisputed facts are that the parties entered into a contract on September 6, 1979, and did not meet until closing on September 11, 1979. By that time, Plaintiffs were already obligated to perform, before any representations had been made by Defendants. Thus, Plaintiffs could not have relied on any statements made by Defendants before Defendants accepted the offer, at which time there was a contract binding both sides."

"[T]he Defendants are not builders of new homes for purpose of sale, . . . and that the Defendants are entitled to judgment as a matter of law."

These conclusions are significant with respect to the issues as posed by the appellants. Implicit in the second comment is a conclusion that as a matter of law an implied warranty of habitability would not apply to the sale of a residence by an amateur builder.

One of the grounds upon which the appellants sought relief was that of fraud. They asserted a right to recover damages for alleged fraudulent misrepresentations made in connection with their purchase of the property from the appellees. We recognized in our recent decision in *Hagar v. Mobley,* Wyo., 638 P.2d 127 (1981), that fraudulent misrepresentations as to material facts can give rise to the remedy of recision of a contract for the sale of real property. Before this remedy is available, however, our legal precedents made it clear that certain elements must be established. First, the buyer is required to prove in a clear and convincing fashion that the seller misrepresented a material fact to him. Second, the buyer must establish that these representations were relied upon by the buyer in entering into the contract and that such reliance was reasonable. Third, the buyer must establish that as a result of his reliance upon the false representations he suffered injury. *Hagar v. Mobley,* supra, 638 P.2d at 137; *Reynolds v. Tice,* Wyo., 595 P.2d 1318 (1979); *Johnson v. Soulis,* supra, 542 P.2d at 872; *Davis v. Schiess,* Wyo., 417 P.2d 19 (1966); and *First National Bank of Cheyenne v. Swan,* 3 Wyo. 356, 23 P. 743 (1890). In connection with the requirement of reasonable reliance we have recognized that false representations in order to constitute actionable fraud must occur prior to the execution of the contract which is sought to be avoided or for which damages are sought to be recovered. *Johnson v. Soulis,* supra; and *Waters v. Trenckmann,* Wyo., 503 P.2d 1187 (1972).

Our examination of the materials before the district court at the time the summary judgment was granted discloses that the misrepresentations which are complained of occurred after the contract had been formed. It is undisputed that the appellants did not meet or have any contact with the appellees until after September 6, 1979. September 6, 1979, is the date that the parties executed the "Offer, Acceptance & Receipt" which the appellants sought to avoid in this action.

The contract was complete when the appellees accepted the appellants' offer to purchase within the time provided in the contract. The agreement gives the parties the right to specific performance in addition to the remedies in the case of breach. The final paragraph provided:

"THIS IS A LEGALLY BINDING CONTRACT, IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL." Under these facts the district court properly concluded that the appellants were bound by contract to purchase the house at the time their offer was accepted by the appellees. *Madison v. Marlatt,* Wyo., 619 P.2d 708 (1980); *Crockett v. Lowther,* Wyo., 549 P.2d 303 (1976); *State v. Kunimoto,* 62 Haw. 502, 617 P.2d 93 (1980); cf. *Elder v. Jones,* Wyo., 608 P.2d 654 (1980).

▪ The documentation before the district court might well create a triable issue as to whether the misrepresentations which are complained of actually occurred, but this issue of fact cannot interfere with our affirmance of the district court's grant of the summary judgment. Even if such misrepresentations of fact did occur, they were made after the contract had been executed. As a matter of law such misrepresentations cannot form the basis of actionable fraud because they could not serve as an inducement to the buyers in entering into the contract. As this court said in *Schaffer v. Standard Timber Company,* 79 Wyo. 137, 331 P.2d 611, 615 (1959):

" * * * A party preparing to consummate a contract cannot be heard to complain if he fails to make reasonably diligent inquiry regarding the facts. * * *"

Any issue with respect to the misrepresentations is not material to the disposition of this case. Since the only misrepresentations that are relied upon were made subsequent to the time of the contract, any issue with respect to whether such representations were made would not be an issue of a material fact. As to this aspect of the summary judgment the district court must be affirmed.

▪ With respect to the second issue asserted by the appellants, it is uncontroverted in the record that the listing, advertisement, and sale of the appellees' property which is in issue was on an "AS IS" basis. It further is not disputed that this disclaimer was brought to the attention of the appellants and agreed to by them. The basis of their bargain on the record before us in this case was a sale made "AS IS." For the purposes of this appeal we hold that there was an effective waiver of any implied warranty of habitability with respect to the sale of the partially completed residence. See *Petersen v. Hubschman Construction Co.,* 76 Ill.2d 31, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979); *Crowder v. Vandendeale,* Mo., 564 S.W.2d 879 (1978); and *Tibbets v. Openshaw,* 18 Utah 2d 442, 425 P.2d 160 (1967). Appellants failed to provide competent evidence which would be admissible at trial controverting the affidavits and deposition testimony of the appellees that the parties intended and agreed that the sale would be "AS IS." *Harris v. Grizzle,* supra; *Cantonwine v. Fehling,* Wyo., 582 P.2d 592 (1978); and *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239 (1976). With the record in that state, we must affirm the grant of the summary judgment by the district court although on a different ground from that which the district court apparently adopted, because as a matter of law the appellees were entitled to judgment on that claim.

We, of course, are entitled to premise the affirmance on any proper legal ground appearing from the record. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981); *Wightman v. American National Bank of Riverton,* Wyo., 610 P.2d 1001 (1980). In this instance, the record before us discloses the proper ground for affirming the district court to be that of waiver of the warranties. In this regard we note the provisions of § 34–21–233(c), W.S.1977, which are indicative of this state's policy.[2]

While the waiver proposition does not require us to deal with the apparent assumption by the district court that a war-

**2.** Section 34–21–233(c), W.S.1977, provides in pertinent part:

"(i) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *"

ranty of habitability would not extend to an instance in which the builder is not one who is engaged in the building of new homes for sale as a commercial venture, we feel compelled to comment upon this proposition. Beginning with *Tavares v. Horstman,* Wyo., 542 P.2d 1275 (1975), this court has been among the leaders in the development of the doctrine of implied warranty of habitability with respect to the sale of new housing. We have extended the protection of the implied warranty of habitability to subsequent purchasers against not only builder-developers, but also against those who hold themselves out as builders. *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733 (1979). We have recognized the existence of an alternative cause of action for negligence in an instance in which the facts indicated that the original builder had breached its duty by failing to select a safe site for construction. *ABC Builders, Inc. v. Phillips,* supra; *Moxley v. Laramie Builders, Inc.,* supra; *Tavares v. Horstman,* supra. In the process we have acknowledged the existence of a public policy protecting the victims of shoddy workmanship against those upon whom home buyers should be entitled to rely in making what will be for most of them the largest and most important purchase of their lifetimes.

We recognize that some jurisdictions have refused to extend the protection of the implied warranty of habitability to situations similar to the present case in which a builder constructed a home for his own use and he later changed his mind and decided to sell it to another. See *Capra v. Smith,* Ala., 372 So.2d 321 (1978); *Mazurek v. Nielsen,* 42 Colo.App. 386, 599 P.2d 269 (1979); *Yepsen v. Burgess,* 269 Or. 635, 525 P.2d 1019 (1974); *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972); *Bolkum v. Staab,* 133 Vt. 467, 346 A.2d 210 (1975); and *Klos v. Gockel,* 87 Wash.2d 567, 554 P.2d 1349 (1976). Under these cases the courts generally require that before the implied warranty of habitability arises there must be a commercial sale analogous to a sale by a merchant under the provisions of the Uniform Commercial Code. See *Bolkum v. Staab,* supra, and § 34–21–204(a) and § 34–

21–231, W.S.1977. Were the case squarely before us we are not sure that we could follow the exception announced by those courts. We perceive much of the rationale underlying the adoption of the rule of implied warranty of habitability to be applicable to so-called casual sales by home builders. The superior knowledge and ability of the builder to discover and prevent latent defects does not disappear simply because the person is building the home with the original intention of residing in it himself. The policy of protecting innocent purchasers from the ravages of shoddy workmanship should not necessarily depend on who built the structure or upon the subjective purpose for the construction. In many instances it would be merely fortuitous that someone who had intended to live in the home was not able to do so, and he should not be able to shift the responsibility for latent defects created by shoddy workmanship to the shoulders of an innocent and unsuspecting purchaser. We find much merit in the comment of the Colorado Supreme Court in *Sloat v. Matheny,* Colo., 625 P.2d 1031, 1034 (1981), as follows:

" * * * To hold otherwise would sanction the casual avoidance of these implied warranties by a builder who could easily feign the construction of a home for personal use and then sell the home on the open market * * *."

It makes sense in the case of a completed structure to apply the same rules to those building for commercial sale and those who build for their own use and later sell. The buyer in either instance has the same problem of discovery of latent defects. In a case such as this in which the structure is not completed the defects are discoverable by the buyer. Indeed, the electrical inspector discovered the 52 violations of the electrical code on a walk-through inspection.

Concluding that the fraudulent misrepresentations which are asserted were not material to the formation of the contract, and that the buyers waived any warranties in this situation, it is our determination that the judgment of the district court be affirmed.