Fred W. MEYER and Blanche L. Meyer, Appellants (Plaintiffs)

v.

James A. LUDVIK and Horseshoe Creek Limited, a Colorado general partnership, Appellees (Defendants).

HORSESHOE CREEK LIMITED, a Colorado general partnership, Appellant (Defendant),

v.

Fred W. MEYER and Blanche L. Meyer, Appellees (Plaintiffs),

and

James A. Ludvik, Appellee (Defendant).

Nos. 83–159, 83–160.

Supreme Court of Wyoming.

April 9, 1984.

E. James Burke of Hanes, Gage & Burke, P.C., Cheyenne, for Fred W. Meyer and Blanche L. Meyer.

Frank J. Jones of Jones & Weaver, P.C., Wheatland for James A. Ludvik.

James W. Gusea of Vines, Gusea & White, P.C., Cheyenne, for Horseshoe Creek, Ltd.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

The resolution of the issues raised by this appeal requires an examination of the elements of misrepresentation as a ground for rescinding a contract. This case arose as an action by appellants Fred W. and Blanche L. Meyer to recover on a promissory note and mortgage executed by appellant Horseshoe Creek Limited (Horseshoe) and assumed by appellee James A. Ludvik as assignee of a contract for the deed to the encumbered ranch property. Ludvik defended on the theory that he was entitled to rescind the assignment of the contract for deed and, therefore, had no obligation on the promissory note or mortgage.

The case was tried to a jury which returned a verdict in favor of the Meyers and against Horseshoe and awarded damages in the amount of $196,007.47. The jury determined that Ludvik was entitled to rescind the assignment of the contract for deed, thereby precluding the Meyers from collecting damages from him. The jury further found that, as a result of the rescission, Ludvik was entitled to recover from Horseshoe all of the payments he had made under the assignment of the contract for deed. The Meyers and Horseshoe appeal from those portions of the jury verdict and judgment which grant rescission of the assignment, and Horseshoe appeals the award of restitution to Ludvik. The Meyers raise questions concerning the trial court's refusal of certain proposed jury instructions.

We will affirm.

## FACTS

In October, 1976, Fred M. Meyer, who is the son of appellants Fred W. and Blanche Meyer, and Tom Scifo formed a partnership under Colorado law known as Horseshoe Creek Limited. The following month Horseshoe entered into a contract to purchase a ranch in Platte County from James Centlivre. In February, 1977, Meyer and Scifo transferred their interests in the partnership to Car-ro, Inc. and to Taras, Inc., respectively, although the partnership entity continued to be known as Horseshoe Creek Limited. The stockholders of Car-ro, Inc. are the minor children of Meyer and his brother. Scifo's minor children are the stockholders of Taras, Inc.

From the time of the purchase of the ranch in November, 1976, Horseshoe borrowed money from Fred W. and Blanche Meyer to meet the payments called for under the contract for deed. By December, 1978, Horseshoe was indebted to the Meyers in the sum of $121,000. To provide security to the Meyers, Horseshoe, on December 11, 1978, executed a promissory note and a mortgage on the ranch property.

Prior to the execution of this note and mortgage, Horseshoe, through its agent Fred M. Meyer, began negotiations with Ludvik and with James S. Jackson Company (Jackson) to assign Horseshoe's interest in the contract for the deed to the ranch. During this time Ludvik conducted extensive research concerning the title to the ranch. As a result of a title insurance commitment dated January 17, 1979, Ludvik was aware of two judgment liens on the property as well as a lis pendens filed by Jackson. Fred M. Meyer, representing Horseshoe, assured Ludvik that Jackson's claim in the amount of $352,010.54 as well as the smaller judgment liens "would be taken care of."

On January 23, 1979, Horseshoe executed an "Assignment of Contract for Deed," transferring all of its interest in the ranch to Ludvik. The assignment expressly provided that Ludvik would (1) assume the balance due under the contract for deed to Centlivre in the amount of $638,689.08; (2) assume the debt owed to the Meyers in the amount of $121,000; (3) execute a promissory note to Horseshoe in the sum of $25,000; and (4) pay Horseshoe $750 in cash. Ludvik took possession of the ranch upon the execution of the assignment.

Horseshoe subsequently obtained releases of the two judgment liens on the property. On August 14, 1979, Horseshoe en-

tered into a compromise and settlement agreement with Jackson, which agreement provided for the payment of $255,000 to Jackson by Horseshoe and Fred M. Meyer in return for the discharge of all claims asserted by Jackson, including the claim to the ranch property. Horseshoe never fulfilled its obligation under the settlement agreement and, pursuant to the agreement's terms, a judgment was entered in favor of Jackson in the United States District Court for the Northern District of Indiana. On January 4, 1980, the United States Marshal for the Northern District of Indiana assigned the Centlivre contract for deed to Jackson on behalf of Horseshoe.

Ludvik, meanwhile, had instituted a quiet-title action against Jackson in October, 1979. The district court determined that Jackson's assignment, rendered by the federal district court in Indiana, took priority over Ludvik's assignment, and Ludvik was removed from possession of the ranch on July 20, 1980. This court reversed that decision in *Ludvik v. James S. Jackson Company, Inc.*, Wyo., 635 P.2d 1135 (1981), and Ludvik was effectively restored to possession in October, 1981. He received $22,000 from Jackson as compensation for the period that he was out of possession. By this time, however, and in further complication of the situation, Ludvik had acquired Centlivre's rights as seller under the original contract for deed.

On February 5, 1982, Fred W. and Blanche Meyer, having decided that it was time to collect on the indebtedness undertaken by Horseshoe and assumed by Ludvik pursuant to the assignment of the contract for deed, sent a letter of demand to Ludvik. In his response dated February 26, 1982, Ludvik asserted that he no longer was obligated to the Meyers under the assignment, because Horseshoe had defaulted on the original contract and was unable to convey clear title to Ludvik as it had agreed to do. This lawsuit followed.

At trial, Ludvik presented evidence to show that he was entitled to rescind the assignment as a result of either fraud or breach of contract by Horseshoe. Ludvik's claim of fraud was based upon the assurances of Fred M. Meyer, acting for Horseshoe, that he would resolve any adverse claims upon the ranch property and would convey a clear title to Ludvik. As grounds for his breach-of-contract claim, Ludvik asserted that Horseshoe had encumbered the subject property contrary to the terms of its contract with Centlivre and, therefore, was unable to perform under its assignment to Ludvik. The jury returned a verdict finding generally that Ludvik was entitled to rescind the assignment from Horseshoe and that he was entitled to restitution in the amount of his payments under the assignment.

Appellants contend on appeal that the evidence is insufficient to support the verdict granting rescission under either theory urged by Ludvik. In addition, the Meyers assert that the trial court erred in failing to instruct the jury concerning their right as third-party beneficiaries to enforce the contract between Ludvik and Horseshoe. Horseshoe challenges the validity of the award of restitution to Ludvik in that the jury failed to consider the benefits received by Ludvik during his possession of the ranch.

We will hold that appellee Ludvik proved by clear and convincing evidence all of the elements of misrepresentation necessary to rescind his assignment from Horseshoe. Since the right of the Meyers, as third-party beneficiaries, to enforce a *valid* assignment between the two principals was never questioned, we will hold that the trial court properly denied the Meyers' proposed jury instructions. Finally, we will hold that the record supports a conclusion that the jury properly considered the benefits received by both parties in arriving at its award of restitution to Ludvik.

I

■ The jury was instructed as follows concerning the elements of fraud or misrepresentation:

"JURY INSTRUCTION NO. 5

"In this action Defendant Ludvik has the burden of proving the contract between

himself and Horseshoe Creek was rescinded.

"1. He was entitled to rescind for fraud or misrepresentation if all of the following are proved:

"a. Any misrepresentation of facts were [sic] made by Horseshoe Creek;

"b. Such misrepresented fact was material;

"c. Ludvik relied on such misrepresentation;

"d. Ludvik's reliance was justified;

"e. Notice of rescission was promptly given upon discovery of the misrepresentation; and

"f. Defendant Ludvik has returned or offered to return all benefits derived from his possession of the ranch."

This instruction is consistent with recent decisions by this court in which we have set out the elements necessary to establish a right to rescind a contract on the basis of misrepresentation. *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983); *Hagar v. Mobley,* Wyo., 638 P.2d 127 (1981). In *Schepps v. Howe,* supra, 665 P.2d at 508, we said:

" * * * We recognized in our recent decision in *Hagar v. Mobley,* Wyo., 638 P.2d 127 (1981), that fraudulent misrepresentations as to material facts can give rise to the remedy of recision of a contract for the sale of real property. Before this remedy is available, however, our legal precedents made it clear that certain elements must be established. First, the buyer is required to prove in a clear and convincing fashion that the seller misrepresented a material fact to him. Second, the buyer must establish that these representations were relied upon by the buyer in entering into the contract and that such reliance was reasonable. Third, the buyer must establish that as a result of his reliance upon the false representations he suffered injury. [Citations.]"

We acknowledged in an earlier case that a party's right to avoid a contract and recover the purchase price is conditional upon his notice, within a reasonable time after he discovers the misrepresentations, that he intends to seek rescission. *Fryer v.*

*Campbell,* 48 Wyo. 122, 43 P.2d 994, 997 (1935). Appellants agree that Instruction No. 5 correctly describes the basis upon which a contract may be rescinded for misrepresentation, but contend that appellee failed to carry his burden of proof with respect to each of the specified elements.

*Misrepresentation of a Material Fact*

Appellants take the position that all of the representations made to Ludvik were promissory in nature and cannot constitute a basis for fraud. Relying on our decision in *In re Adoption of Hiatt,* 69 Wyo. 373, 242 P.2d 214 (1952), appellants urge that the fraud must relate to a past or existing fact and may not be predicated on a representation which relates to the future or which depends upon contingencies that may or may not happen.

■ We agree with appellants that a promise or a statement of one's intention to act in the future, without more, cannot form the basis for an action in fraud. However, a promise constitutes a representation of the maker's present intention to perform, which representation is an assertion of a fact—the maker's state of mind. If such promise is made with the intention of not performing, it is a misrepresentation of an existing fact and is generally held to be actionable. We recognized this proposition in *Johnson v. Soulis,* Wyo., 542 P.2d 867, 872 (1975), where we said:

" * * * The general rule is that fraud ordinarily cannot be founded upon a representation which is promissory in nature. [Citations.] This general rule, however, is subject to an exception to the effect that if the representation, although promissory in nature, is made with no intention of performing it or with a present intention not to perform, it may then serve as a foundation for an action in fraud; one of the justifications for the exception being that there does exist a misrepresentation of a present fact, that is, the intention of the promissor. [Citations.]"

See also, *Bissett v. Ply-Gem Industries, Inc.,* 533 F.2d 142, 145 (5th Cir.1976);

*Schroerlucke v. Hall,* Ky.App., 249 S.W.2d 130 (1952); *Hearns v. Hearns,* 333 Mich. 423, 53 N.W.2d 315 (1952); *Roberson v. Swain,* 235 N.C. 50, 69 S.E.2d 15 (1952); James and Gray, *Misrepresentation—Part II,* § 10, 37 Maryland L.Rev. 488, 502–508 (1978).

*Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y. S.2d 714, 143 N.E.2d 906 (1957), presents a factual situation similar to the instant case. There, the defendant had represented that he

"' * * * would undertake to finance the manufacture of the patented machine' and 'would use his best efforts to promote the sale or lease of the machine to other manufacturers,' "

if the plaintiff would assign his patent to the defendant and execute certain other contracts. *Sabo v. Delman,* supra, 164 N.Y.S.2d at 715, 143 N.E.2d at 907. In rejecting the appellate division's conclusion that such statements were promissory in nature and therefore not basis for an action in fraud, the New York Court of Appeals said:

"While 'Mere promissory statements as to what will be done in the future are not actionable' (*Adams v. Clark,* 239 N.Y. 403, 410, 146 N.E. 642, 644), it is settled that, if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of 'a material existing fact' upon which an action for rescission may be predicated. [Citations.]" *Sabo v. Delman,* supra, 164 N.Y.S.2d at 716, 143 N.E.2d at 908.

This rule is consistent with the position taken by the Restatement, Second, Contracts § 171(2):

"If it is reasonable to do so, the promisee may properly interpret a promise as an assertion that the promisor intends to perform the promise."

Comment b of that section provides:

"*A promise as a statement of intention.* It is ordinarily reasonable for the promisee to infer from the making of a promise that the promisor intends to perform it. If, therefore, the promise is made

with the intention of not performing it, this implied assertion is false and is a misrepresentation. * * * The promisor's intention not to perform his promise cannot be established merely by proof of its non-performance. Nevertheless, the probable inability of a party, at the time the contract is made, to perform it, for instance the insolvency of one who buys land, is evidence bearing on the question of intent not to perform. If the promisor knows or should know that he cannot at least substantially perform his promise, this is strong although not conclusive evidence of an intent not to carry it out."

The jury had an opportunity to observe the demeanor of the witnesses and gauge their credibility as they testified concerning Horseshoe's representation that all liens on the property would be removed and that fee title would pass. There was evidence that Horseshoe and its representatives were in a precarious financial situation and were facing a number of other lawsuits at the time of the transaction with Ludvik. The jury heard testimony concerning the significance of these representations to Ludvik during negotiations for the assignment of the contract for deed.

■ The rule that this court, as a reviewing court, will not substitute its judgment on the facts for that of the jury, *Rissler & McMurry Company v. Atlantic Richfield Company,* Wyo., 559 P.2d 25 (1977), is particularly compelling here where the fact to be determined is the state of mind of the defendant. It is the trial court, not this court, which must be satisfied that Horseshoe's misrepresentation of a material fact was established by clear and convincing evidence. *Thomasi v. Koch,* Wyo., 660 P.2d 806, 811 (1983).

In *Thomasi v. Koch,* supra, we reviewed our appellate duties when considering factual matters determined by the district court under the clear-and-convincing standard. We said:

" * * * The only question we must resolve is whether the evidence viewed in the light most favorable to the appellee

and ignoring any evidence in favor of the [appellant] is sufficient to make out a prima facie case. *Ward v. Waterman,* [85 Cal. 488, 24 P. 930 (1890)]. This court previously has adopted language to this effect:

"' * * * When the evidence is such that the mind readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory.' *Continental Sheep Co. v. Woodhouse,* 71 Wyo. 194, 202, 256 P.2d 97 (1953), quoting language found in *Good Milking Mach. Co. v. Galloway,* 168 Iowa 550, 150 N.W. 710, 712 (1915).

"We further had said that clear and convincing evidence is 'that kind of proof which would persuade a trier of fact that the truth of the contention is highly probably.' *MacGuire v. Harriscope Broadcasting Co.,* Wyo., 612 P.2d 830, 839 (1980)." 660 P.2d at 811–812.

In this case, the jury had before it evidence as to the circumstances surrounding the execution of the assignment, including the likely inability of Horseshoe to substantially perform its promise. We conclude that such evidence was sufficient to persuade the jury of the high probability that Horseshoe's agents misrepresented a material fact—their intent to remove Jackson's claim to the ranch property.

*Justifiable Reliance*

Next we must examine the evidence to determine whether it supports a finding that Ludvik relied on Horseshoe's promises and, if so, whether such reliance was justified. Ludvik testified that he entered into the assignment in reliance on Horseshoe's representations that he would receive clear title to the property and that he continued to rely on these representations when he paid $128,520 under the terms of the assignment. Ludvik testified further that he believed that all parties entered into the assignment with the best of intentions, that he enjoyed a friendly relationship with Horsehoe's agents during negotiations for the ranch, and that Fred M. Meyer, the primary negotiator for Horseshoe, remained on the ranch and worked for Ludvik following the execution of the assignment.

■ Appellants contend that Ludvik's asserted reliance on Horseshoe's representations was unjustified since, prior to accepting the assignment, he procured a title insurance commitment indicating the state of title to the ranch. Furthermore, Ludvik sought legal advice and was well aware that litigation or settlement would be necessary to remove Jackson's claim to the property.

Restatement, Second, supra, § 171, Comment b provides:

"It is ordinarily reasonable for the promisee to infer from the making of a promise that the promisor intends to perform it."

In determining the reasonableness of a recipient's reliance on statements relating to the future, courts have distinguished between predictions of external events not within the speaker's control and commitments as to what the speaker will do in the future. While no one should expect to justify his reliance on predictions, opinion, or estimates about that which is yet to come, reasonable people can and do rely on commitments within the apparent control of the promisor. 37 Maryland L.Rev., supra, at 502. The court in *Sabo v. Delman,* supra, 164 N.Y.S.2d at 717, 143 N.E.2d at 908, said in this regard:

"The representations of the defendant Delman in this case, that he would finance plaintiff's machine and use his best efforts to promote its sale and lease, related to something to occur in the future, but that does not prevent the plaintiff from relying upon them in an action brought to avoid the contracts which they induced. In [*Ritzwoller v. Lurie,* 225 N.Y. 464, 467–468, 122 N.E. 634, 635] which involved representations having an element of futurity just as pronounced as those here alleged, the court wrote in language exceedingly apt: 'While the representations * * * related to something which was to occur in the future * * * we think the allegations in the

**466**

complaint describe a case where a defendant has fraudulently and positively as with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur. Such statements and representations when false are actionable within the authority of *Adams v. Gillig*, 199 N.Y. 314, 92 N.E. 670.'"

Similarly, the representation in the case at bar, upon which Ludvik relied, was "a specific affirmation of an arrangement" to resolve adverse claims to the property after the execution of the assignment. Ludvik's knowledge of these claims and their legal implications does not prevent his justifiable reliance on Horseshoe's promise and we see no reason to disturb the jury's conclusion to that effect.

*Prompt Notice of Rescission*

■ Appellants rely on *Fryer v. Campbell*, supra, 48 Wyo. 122, 43 P.2d 994, for the proposition that a rescission must be exercised promptly upon the discovery of grounds giving rise to the right. However, what constitutes a prompt and timely notice depends upon the facts of a particular case. *Eggen v. M. & K. Trailers and Mobile Home Brokers, Inc.*, 29 Colo.App. 177, 482 P.2d 435 (1971).

In the instant case, Horseshoe assigned the contract for deed to Ludvik on January 23, 1979. On August 14, 1979, Horseshoe executed a compromise and settlement agreement with a purported end toward the release of all claims asserted by Jackson. Horseshoe did not fulfill its obligation under the settlement agreement, and Ludvik was removed from possession of the ranch on July 20, 1980. On October 27, 1981, this court determined that Ludvik's interest in the ranch property was superior to that of Jackson, *Ludvik v. James S.*

*Jackson Company, Inc.*, supra, and Ludvik was restored to possession. Ludvik testified that he resumed possession of the ranch as the purchaser of Centlivre's seller interest in the original contract for deed. On February 5, 1982, Fred W. and Blanche Meyer sent a letter to Ludvik demanding payment on the promissory note that Ludvik had assumed under the terms of the assignment from Horseshoe. In a letter dated February 26, 1982 to the attorney representing the Meyers and Horseshoe, Ludvik responded that he considered his title to the ranch to be derived from Centlivre, not from Horseshoe, and that he no longer was obligated under the assignment from Horseshoe. Ludvik testified at trial that he considered this letter to be a notice of rescission of the assignment:

"Q. Have you [Ludvik] ever given anyone any notice that you have rescinded this contract?

"A. Yes, I have.

"Q. Whom?

"A. I believe to Mr. Burke.

"Q. And I show you what's been marked for identification as Defendants' Exhibit 12, and can you identify that document?

"A. Yes, this is a letter that I sent to Mr. Burke and his firm in response to the letter of demand when Fred and Blanche, the letter of demand from Fred and Blanche Meyer.

"Q. What was the date on that letter?

"A. February 26, 1982."

Appellants contend that Ludvik had discovered as early as 1979 or 1980 all of the facts upon which he based his claim for rescission and that, therefore, his letter of February 26, 1982 cannot reasonably be considered a timely notice of rescission. We do not agree.

■ Because of the nature of the representations—promises to remove at an unspecified future date all adverse claims to the subject property—Ludvik could not be expected to discover right away that the representations were false. In addition, the compromise and settlement agreement

executed by Horseshoe undoubtedly had the effect of inducing belief that the situation would be remedied. An aggrieved party's delay in rescinding a contract is excused where the other party's continued assurances that his representations are true contribute to the delay. *Eggen v. M. & K. Trailers and Mobile Home Brokers, Inc.*, supra; *Melms v. Mitchell*, 266 Or. 208, 512 P.2d 1336, 65 A.L.R.3d 376 (1973); Annot., 1 A.L.R.3d 542 and cases cited therein. After Ludvik resumed possession of the ranch in October, 1981, under the position of Centlivre, there is no indication that he acted in a manner inconsistent with an intention to disaffirm the assignment. See *Fryer v. Campbell*, supra; *Bodenhamer v. Patterson*, 278 Or. 367, 563 P.2d 1212 (1977). Therefore, we hold that under the facts of this case, the jury properly considered the letter of February 26, 1982, to be a timely notice of rescission.

*Tender of Benefits*

■ Appellants assert that Ludvik's failure to prove a prior tender or offer to restore benefits precludes rescission of the assignment. Such tender will not be required, however, where the decree of the court can impose those duties of restitution as justice requires. *Fryer v. Campbell*, supra, 43 P.2d at 996; *Woods v. City of Hobbs*, 75 N.M. 588, 408 P.2d 508, 510–511 (1965); *Melms v. Mitchell*, supra, 512 P.2d at 1342. In *Fryer v. Campbell*, supra, 43 P.2d at 996, in discussing the necessity of an offer by the injured party to restore benefits prior to an action for rescission in equity, we said:

"Restitution is a condition of relief, not of instituting the suit."

We hold that proof of a prior tender was not essential to appellee's defense of rescission based upon misrepresentation.

## II

■ The Meyers contend that the trial court erred in denying two proposed jury instructions concerning the rights of third parties to enforce contracts made for their benefit. The first proffered instruction provided:

"A party may enforce a contract expressly made for his benefit even though he was not a party to the transaction."

Although this instruction represents an accurate statement of the law, *Lawrence v. Fox*, 20 N.Y. 268 (1859), it was properly refused by the trial court. No question was ever raised as to the status of the Meyers as third-party beneficiaries or their right to enforce the pertinent provisions of the assignment between Horseshoe and Ludvik, should that assignment be proven valid. Since these matters were not in issue, the proposed instruction would have added to the confusion in this case without assisting the jury in resolving the essential question—the right of Ludvik to rescind the assignment of the contract for the deed to the ranch.

■ The second proposed instruction provided as follows:

"In this action the Plaintiffs, Fred and Blanche Meyer, claim that they were third-party beneficiaries of the contract entered into between James A. Ludvik and Horseshoe Creek Limited.

"Once the rights of a third-party beneficiary vest, the original parties to the contract cannot rescind the contract based upon the happening of an event or an occurrence which occurs after the rights of the third-party beneficiary have vested.

"The rights of a third-party beneficiary vest when:

"a. A contract was made that benefited the third-party.

"b. The third-parties acquire knowledge of the contract for their benefit.

"c. They assent thereto. Assent is implied if the third party had knowledge of the contract and failed to raise any objection thereto.

"If you find that Defendant Ludvik can rescind based upon fraud, Fred and Blanche Meyer have no rights under the contract."

This instruction, by its terms, concerns the right of the original parties to mutually

rescind their agreement, once the rights of the third-party beneficiary have vested. Accordingly, this instruction has no relevance to the instant case and was properly denied by the trial court. The concept of vesting does not preclude the assignee of mortgaged premises, who agrees to assume the mortgage, from asserting against the mortgagee/third-party beneficiary grounds for rescission or any other defense that he could have raised against the mortgagor/assignor. *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 288 P. 574 (1930). That which was said in *Bank of Alameda County v. Hering*, 134 Cal.App. 570, 25 P.2d 1004, 1005 (1933) is pertinent here:

" * * * It is conceded that respondent [the mortgagee] was not a party to the alleged fraud, but it was alleged that appellant's [the grantee's] grantor made certain fraudulent representations in 1924 at the time appellant [the grantee] purchased the property. * * * An agreement of assumption is treated as a contract made for the benefit of a third person [citations], and such a contract may be enforced by the third person at any time before it is rescinded. Civ. Code, § 1559. In order to defeat respondent's [the mortgagee's] rights under the agreement of assumption, it was necessary for appellant [the grantee] to allege and prove a rescission of said agreement."

Hence, the second instruction proposed by the Meyers did not address the issues raised by the present case and was properly excluded by the trial court.

## III

The jury verdict awarded restitution to appellee in the sum of $128,523.25. This figure reflects the actual expenditures made by Ludvik under the terms of the assignment:

| | | |
|---|---|---|
| January 19, 1979 | $ 750.00 | Cash at signing |
| January 19, 1979 | $ 42,014.32 | Payment |
| August 1, 1979 | $ 42,173.12 | Payment |
| December 24, 1979 | $ 41,857.68 | Payment |
| September 21, 1979 | $ 1,728.13 | 1978 taxes |
| Total: | $128,523.25 | |

Horseshoe contends that the jury verdict is in error for failing to account for the benefits received by Ludvik during his possession of the ranch. Specifically, Horseshoe asserts that the jury failed to consider the fair rental value of the ranch property, including the $22,000 Ludvik received from Jackson as compensation for the time that he was out of possession, and certain profits owed to Fred M. Meyer from the sale of cattle, which profits were included in the purchase price of the assignment.

The jury was instructed that a finding that Ludvik was entitled to rescind the assignment would necessitate restoring both parties to their former positions:

### "JURY INSTRUCTION NO. 9

"A party rescinding a contract is entitled to restitution and is entitled to receive back the money he has paid on the contract. If you determine James Ludvik rescinded the contract with Horseshoe Creek Limited he is entitled to recover the money paid on the contract between the time he entered into the contract and the time it was rescinded. Horseshoe Creek is entitled to receive any benefits that James Ludvik received during the time he possessed the ranch prior to rescission."

We have recognized that the purpose of an action in rescission is to place the parties in their former positions, but have held that a court

" * * * may grant rescission whenever by the exercise of its powers it can do what is practically just between the parties." *Fryer v. Campbell*, supra, 43 P.2d at 996.

See also, *Dreiling v. Home State Life Insurance Company*, 213 Kan. 137, 515 P.2d 757, 766–767 (1973); *State ex rel. Burk v. Oklahoma City*, Okl., 522 P.2d 612, 620–621 (1974).

The jury had before it evidence that Ludvik had purchased Centlivre's rights under the contract for deed and had incurred litigation expenses in excess of $139,000, in order to protect his interest in the ranch property. As a result of these

expenditures Ludvik, at the time of trial, had paid or was obligated to pay $43,669.27 more than he had agreed to pay under the assignment of the the contract from Horseshoe. A reasonable conclusion is that the jury considered the benefits received by Ludvik while he was in possession of the property, but determined that the value of such benefits was offset by the unanticipated, additional expenses that Ludvik had incurred in protecting his interest in the ranch.

We are mindful that the parties cannot be restored to the positions that they held prior to the execution of the assignment. Horseshoe, by allowing various liens to be levied on the ranch, defaulted on the original contract for deed from Centlivre, thereby permitting Ludvik, in Centlivre's position, to declare a forfeiture. Nevertheless, we conclude that the verdict and judgment in this case are supported by the record and represent an adjustment of the equities between the parties to the extent that is "practically just."

In view of our affirmance of the verdict, we will not address the appellants' contention that the jury's failure to follow instructions with respect to restoration casts doubt on other aspects of the verdict.

The issue of the reimbursement to Fred M. Meyer of profits earned as a result of the sale of cattle is not properly before this court, since Fred M. Meyer is not a party to this action.

Affirmed.

BROWN, Justice, dissenting.

I disagree with the majority's disposition of this case. The trial court instructed the jury that Ludvik was entitled to rescind the contract with Horseshoe for fraud if all the following were proved.

"a. Any misrepresentation of facts were [sic] made by Horseshoe Creek;

\* \* \* \* \* \*

"c. Ludvik relied on such misrepresentation;

"d. Ludvik's reliance was justified;

"e. Notice of rescission was promptly given upon discovery of the misrepresentation; and

"f. Defendant Ludvik has returned or offered to return all benefits derived from his possession of the ranch."

The majority approved this instruction citing *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983), and *Hagar v. Mobley,* Wyo., 638 P.2d 127 (1981). I have no disagreement with the instruction. However, I do believe that Ludvik failed to prove that fraud existed at the time of the assignment.

Written contracts are not to be treated lightly or interfered with by the courts absent compelling reasons. The presence of fraud in a contract transaction is reason to disturb a written contract. Fraud, however, is never presumed; in fact, there is a legal presumption that every transaction is free from fraud. *Smith v. Waterloo, C.F. & N.Ry. Co.,* 191 Iowa 668, 182 N.W. 890 (1921); 17 C.J.S. Contracts § 154, p. 907 (1963). The burden to overcome this presumption rests upon Ludvik; he must establish clear proof that fraud existed at the time of the assignment.

Ludvik claims the false representation was that "They [representatives of Horseshoe] told me that I would have clear title to that property." However, Ludvik acknowledged that all representations made by Horseshoe concerned events that were going to happen in the future. Fraud must relate to a present or preexisting fact. Statements or representations regarding future or contingent events, or expectations and probabilities do not constitute fraud. *In re Adoption of Hiatt,* 69 Wyo. 373, 242 P.2d 214 (1952).

Horseshoe did not make any false representation regarding an existing or preexisting fact. Ludvik has never contended otherwise. The majority, however, say "a promise constitutes a representation of the maker's present intention to perform, which representation is an assertion of a fact, the maker's state of mind. If such a promise is made with the intention of not performing, it is a misrepresentation of an existing fact and is generally recognized to

be actionable." In support of this premise the majority quotes from *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957):

> " * * * If a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a 'material existing fact' upon which an action for rescission may be predicated. [Citations.]"

The majority reasons that Horseshoe had a preconceived and undisclosed intention not to perform the agreement with Ludvik, which intention existed before and at the time the agreement was entered into. According to the majority the evidence of this state of mind was that "Horseshoe and its representative were in a precarious financial situation and were facing a number of other lawsuits at the time of the transaction with Ludvik." The majority does not, and cannot point to any other circumstance or evidence indicating that Horseshoe had a preconceived and undisclosed intention not to perform. I submit that a "precarious financial situation" cannot rationally be equated with a preconceived and undisclosed intention not to perform the contract. This is a feeble circumstance upon which to predicate fraud. The majority opinion has seriously eroded the requirements of an action in fraud.

Even if it could be determined that Horseshoe had a preconceived and undisclosed intention not to perform the contract, there is no credible evidence that Ludvik relied upon what Horseshoe told him, or that any purported reliance was justified. In fact, the evidence is to the contrary.

Before Ludvik's purchase of the ranch from Horseshoe he felt that Horseshoe representatives were the type of people who were likely to withhold material facts. Because of his feelings Ludvik had Horseshoe investigated before he entered into the agreement to purchase the ranch. As a result of this investigation Ludvik believed that he and his attorney knew more about Horseshoe than anyone had ever known before.

Before purchasing the ranch Ludvik also procured a title insurance commitment. The commitment showed the state of title to the ranch and what had to be done before clear title could be given. Mr. Ludvik's Wyoming attorney advised him not to get involved in the purchase of the ranch. Notwithstanding Ludvik's distrust of Horseshoe, his investigation, the title insurance commitment, and the advice of an attorney, he said at trial that he relied on Horseshoe's representatives. I would hold that this so-called reliance was not justified, that the record clearly shows that Ludvik did not rely on any representations made by Horseshoe but made his own conclusions based upon his independent investigations.

The deficiencies in Ludvik's proofs are progressively more glaring. One of the elements of a fraud action based on misrepresentation as the court instructed, is that "notice of rescission was promptly given upon discovery of the misrepresentation." Initially Ludvik said he did not give notice of rescission. The record reflects:

> "Q. * * * [H]ave you [Mr. Ludvik] given them notice of rescission, to the best of your knowledge?"
>
> "A. No."

Later in Ludvik's testimony an effort was made to rehabilitate him and supply the deficiency in his proof of notice recission. On redirect examination by his attorney Ludvik testified in the manner indicated in the majority opinion. The letter referred to by Ludvik falls far short of notice of rescission. It states that Horseshoe was in default and indicates Ludvik's willingness to negotiate a settlement of the pending lawsuit. In any event, the so-called notice relied on by Ludvik cannot be characterized as prompt. The majority in effect holds that notice given two or three years after knowledge of the relevant facts is prompt. I disagree.

The idea to rescind the contract was an afterthought that came to Ludvik five days before trial. On February 24, 1982, this

action was filed. Two months later Ludvik filed his answer, counterclaim and cross-claim. In the cross-claim he alleged breach of contract. Thereafter, for the next fifteen months the parties to this lawsuit, several judges and others jousted with motions and amendments. It was not until May 18, 1983, that Ludvik decided that he had been defrauded and for the first time filed his pleadings alleging rescission because of fraud. The facts upon which the alleged fraud was based took place in 1979 or 1980. Ludvik had full knowledge of these facts when they occurred. This was the time frame during which Ludvik and his lawyer knew more about Horseshoe than anyone had ever known before.

Lastly, there is no evidence in the record that Ludvik returned or offered to return any of the benefits he derived from his possession of the ranch.

This case was presented to the jury on alternate theories for rescission. In addition to misrepresentation Ludvik sought rescission alleging that Horseshoe had breached the contract. The jury returned a general verdict; therefore, we do not know whether they found that Ludvik was entitled to rescind the contract for misrepresentation or for breach of contract. The majority did not address the breach of contract theory, apparently thinking that if the verdict could be sustained on either theory it would be sufficient. I do not disagree; therefore, I will not address the breach of contract theory of rescission. Suffice it to say, Ludvik was not entitled to rescind for breach of contract because he himself had also breached the contract; his breach had never been cured and existed at the time of trial.

In answer to my concerns about this case it will likely be contended that the Supreme Court cannot second guess the jury on evidentiary determinations. However, I would hold, as a matter of law, that there was no evidence of actionable misrepresentation, no evidence that Ludvik justifiably relied on any representation, no prompt notice of rescission, and no evidence that Ludvik returned or offered to return bene-

fits derived from his possession of the ranch. The fraud action should have never gone to the jury or the trial court should have granted appellant's motion for a judgment notwithstanding the verdict.

The underlying and related problems of this case have been around a long time. This is the fourth time these parties have been before this court. They have been in an Indiana federal district court and a Colorado state district court. Without fear of contradiction I can say that the judiciary is weary of this case. If this court had reversed the present case it would be tried again and no doubt be back before us. By affirming, hopefully, the case is finally over. I almost succumbed to the temptation to vote to affirm as a matter of expedience to finally end the case—but not quite.