### Melissa Stiles v. Elizur Stiles and another.

*Husband and wife. Rules regulating transactions between. Fraud.* When a husband obtains his wife's property under the form of a purchase, surrounded by suspicious circumstances and strong evidence of fraud, and for a consideration merely nominal, he will be bound to make clear and satisfactory proof of good faith, or the Courts must presume that he has made improper use of his influence: *Held,* also, that in such a case, the ordinary presumptions in favor of the validity of a deed would be rebutted by such circumstances of suspicion and fraud. *Held,* further, that actual fraud was made out.

*Heard November 11th, 1865. Decided January 5th.*

Appeal in chancery from Eaton Circuit.

The bill in this cause was filed by the complainant, Melissa G. Stiles, against her husband, Elizur Stiles, and Wilbert Stiles, his son by a former marriage, to set aside a certain deed of forty acres of land, executed by the complainant to the said Wilbert, on the ground that the same was obtained by fraud.

The bill sets forth that she executed said deed, (bearing date September 27, 1858,) to said Wilbert, without consideration, and that he immediately conveyed the premises to said Elizur; that she was induced to execute the same by the representations of the said Elizur, to the effect that the premises were different than those actually contained in said conveyances.

The defendants deny any such fraudulent representations, and allege that the said conveyances were executed in pursuance of an express agreement previously made between complainant and said Elizur.

The facts sufficiently appear in the opinion for a full understanding of the case.

*D. D. Hughes* for complainant.

The deeds of the 27th of September, 1858, amounting to a conveyance from the wife to her husband, are void as against public policy, or if not void, they will be jealously watched, and the husband will be held to show affirmatively that good faith was used, and that the deed was advantageous to the wife.

This has long been the law of contracts between persons whose relations imply undue influence, such as guardian and ward, attorney and client, and under our law authorizing a wife to convey as femme sole, the reason of the rule applies with the strongest force to the relation of husband and wife. 2 *Johns. Ch.* 549; 32 *Barb.* 254; 7 *Paige*, 463; 1 *Edw.* 572.

*W. S. Gear, S. T. Douglass* and *H. A. Noyes* for defendants.

1. Fraud will not be presumed. The burden is upon the complainant to establish it by proof so clear and conclusive as to leave no rational doubt on the mind as to its existence. 2 *Doug. Mich.* 176.

2. It is improbable that the complainant could have been mistaken or deceived as to what premises were described in her deed to Wilbert. She had lived many years on the farm, and must be presumed to have known the description of the different parcels, and the testimony adduced by her shows, in opposition to her statement in the bill, that the description was read to her before she signed the deed.

Admit that the transaction appears in the sequel to have been unwise and improvident on her part, it was natural, and it was no more unwise or improvident than her other trans-

actions in respect to her property, the validity of which is not questioned. .

COOLEY J.

The complainant, who is the wife of Elizur Stiles, files her bill against him and Wilbert Stiles, his son by a former marriage, to set aside a conveyance made by her to the latter, of lands which he has transferred to his father, on the ground that it was obtained by fraud.

From the record it appears that Timothy Hascall died in May, 1853, the owner of a farm of 240 acres, leaving the complainant, his widow, and Charles A. Hascall his son and heir at law. The latter, soon after his father's death, gave a warranty deed of the farm, subject to his mother's right of dower, to his uncle Henry C. Hascall. Charles was a minor when this deed was given, but on August 6, 1853, after he had come of age, Henry C. Hascall conveyed the farm to complainant, with the knowledge and consent of Charles, and she thereby became vested with an undisputed title to the whole.

On June 9, 1855, complainant conveyed the north west forty acres of the farm to George G. Hascall, an infant son of Charles, and also executed to Charles 'a mortgage on the undivided two-thirds of the remaining two hundred acres, to secure the payment of her notes for $2300. On the same day, in contemplation of marriage with the defendant Elizur Stiles—which took place the next day—she conveyed to him. the same undivided two-thirds of the farm which she had thus mortgaged.

Charles A. Hascall, by the death of his son George, became owner of the forty acres sold to the latter, and the defendant, Elizur Stiles, by means alleged to be fraudulent, but which are immaterial in this case, obtained from him a deed thereof. The Charles mortgage was assigned to one Dennis Morrissy, and on May 7, 1858, the complainant and defendant Elizur executed to him, in satisfaction of the mortgage, a warranty

deed of the two hundred acres, excepting therefrom forty acres occupied as a homestead, and which, by the payment of the mortgage, was left free from incumbrance; the complainant being owner of one undivided third part thereof, and the defendant Elizur, of the remaining two-thirds.

September 27, 1858, complainant conveyed her interest in the homestead forty to defendant Wilbert Stiles, who immediately conveyed to his father. These conveyances the bill seeks to set aside as fraudulent.

The bill alleges that complainant was induced to execute the deed to Wilbert by the false representation of the defendant Elizur, that the land described therein was the forty acre lot conveyed to George G. Hascall, which had been, or was about to be purchased for said Wilbert, and in which it was feared complainant might have some interest.

The answer denies all deception and fraud, and insists complainant fully understood the deed she was executing. To show a consideration for it, it is alleged that when the deed was given to Morrissy in satisfaction of the Charles mortgage, Morrissy refused to receive a quit-claim on account of Charles having been a minor when he conveyed to his uncle Henry, and that complainant agreed to deed to defendant Elizur her interest in the homestead if he would unite with her in the covenants in the deed to Morrissy.

If the averments in the answer were to be taken as true, it would be difficult to condemn too strongly the conduct of a husband, who, having already had a large portion of his wife's property bestowed upon him as a free gift, drives with her a hard bargain for the remainder, and actually obtains it for a consideration entirely nominal, and which neither incommodes him in the least, nor in the slightest degree benefits her. There is no pretense that the conveyance was a gift; the defense rests upon the basis of contract, and a husband who thus obtains his wife's property, under the form of a purchase, and for a consideration merely nominal, would be bound to make clear and satisfactory proof of good faith, or

the courts must presume that he has made improper use of his influence as husband to extort the conveyance. On his own showing, the bargain was an unconscionable one; and the ordinary presumptions in favor of the validity of a deed are rebutted by the circumstances.

But the statements of the answer on this point are scarcely plausible. They are, in substance, that the complainant, in order to satisfy the mortgage, conveyed a part of her lands to the holder, and gave all the rest to her husband for uniting with her in the conveyance. As the only inducement of a pecuniary nature she could have had for satisfying the mortgage in this way, would have been to save something for herself, and by this arrangement she saved nothing, it is difficult to believe that she made such a settlement the subject of contract. If she was to save nothing, it was a matter of indifference to her, whether the mortgage was satisfied in the mode proposed, or by foreclosure. Even if both parties were to save their interests in the homestead by the arrangement, the husband was strongly interested in making it, if it was a desirable one, and was hardly in position to demand compensation for warranting a title which nobody disputed, before he would complete a settlement for his own benefit. We can see reason why the wife should give up part of her property to save the rest, but none at all why she should surrender part to induce another party to accept the remainder.

The evidence adduced to substantiate the case made by the answer is still more unsatisfactory than the case itself. It consists of statements and admissions alleged to have been made by complainant; the latter, under circumstances when any such admissions would have been entirely unnatural and without motive. The witnesses to prove them are the children of the husband by his former marriage, one of whom testifies to having taken down, in writing, at the time, the most important of these statements, at the request of his father, as if in anticipation of litigation, though the parties where then living together, and no difficulties had yet sprung

up between them.  If the husband was dealing fairly and frankly with his wife, and anticipated no difficulty, it is inconceivable that he should have made spies of his children, to listen to and note down her words.

But the proof of actual fraud adduced by complainant is very strong, and in connection with the suspicious circumstances surrounding the defense, is satisfactory to us that complainant was induced to execute the deed to Wilbert Stiles, under the belief that it covered the land conveyed to George G. Hascall.  The testimony of the officer who drew the deed and took the acknowledgment is positive to the fraud, and he is strongly corroborated by the other evidence. What plausible reason the husband was able to give for desiring the deed we do not know; but it is evident that complainant made it because she was requested, and because she did not suppose any real interests of her own were to be transferred by it.

We think the decree of the Court below was correct, and it must be affirmed.

CHRISTIANCY and CAMPBELL, JJ. concurred.