HEARNS *v.* HEARNS.

1. DIVORCE—DIVISION OF PROPERTY—FRAUD.

Finding of trial court that defendant husband had executed conveyances of entirety property to wife and their children under the representation that wife would forgive his prior misconduct and resume marital relations, re-establish the home life and thereby assure the livelihood and financial welfare of the family but that wife had no intention of forgiving him or resuming marital relations, contrary to her entreaties and representations, *held*, supported by evidence presented, hence it was inequitable that all of such property be retained by her in subsequent suit for divorce.

2. FRAUD—EQUITY—HUSBAND AND WIFE.

Equity will assist errant husband in recovering property which wife had obtained from him upon representation that she would forgive his misconduct and resume marital relations, because of fraud on her part.

3. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—RELEASE TO SPOUSE —CONVEYANCE TO THIRD PARTY.

A husband may release to his wife his interest in property held by them as tenants by the entireties but separate alienation by one spouse only is barred (CL 1948, § 557.101).

4. DIVORCE—PARTIES—JURISDICTION.

Rights of grantees to conveyance which defendant husband sought to have set aside by cross bill in wife's suit for divorce may not be determined in such suit, since they are not parties before the court.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 17 Am Jur, Divorce and Separation § 445.
[3] 26 Am Jur, Husband and Wife §§ 80, 81, 257.

5. SAME—DIVISION OF PROPERTY—CHILDREN—MODIFICATION OF DECREE.

Decree awarding wife 1/2 interest in homestead premises, and a 1/6 interest each to defendant husband and each of their 2 children is modified to award wife the entire interest subject to determination of rights of children in a proper proceeding and making a larger award of cash to husband.

6. SAME—DIVISION OF PROPERTY.

Portions of decree awarding absolute divorce to wife, giving her household goods, furniture and belongings and $4,000 in cash and requiring her to pay husband therefrom $750, release her interest in a 10-year-old car and awarding him equity in property being purchased on land contract are affirmed.

7. WITNESSES—DIVORCE—ABSENCE—CONTINUANCE.

Denial of continuance in divorce case in order to permit plaintiff wife's attorney to call their 18-year-old daughter to testify was not error, where she was not in court, it was stated she was absent from city on a trip with her high school class, no statement was made as to the nature of the testimony she might give except that it would be corroborative and not relate to claim of adultery and no showing made that her presence could not have been had at the time of the trial.

8. DIVORCE—COSTS—MODIFICATION OF DECREE.

No costs are allowed in suit for divorce, where decree is somewhat modified as to division of property without materially affecting total amount given each party.

Appeal from Clare; Holbrook (Donald E.), J. Submitted April 15, 1952. (Docket No. 89, Calendar No. 45,189.) Decided May 16, 1952.

Bill by Dolores Hearns against Curtice E. Hearns for divorce on grounds of extreme cruelty and adultery. Cross bill by defendant against plaintiff to set aside conveyances. Decree for plaintiff which also set aside conveyances and made distribution of property. Plaintiff appeals. Modified and remanded.

*Harold B. Hughes* and *Russell D. Otterbine,* for plaintiff.

*Floyd E. Wetmore,* for defendant.

CARR, J. The parties to this case were married in April, 1928. In November, 1949, serious trouble developed between them, resulting from misconduct on the part of the defendant. In consequence, plaintiff became very angry at defendant and stated to him in substance that she would not continue to live with him longer in the marital relation. Thereupon defendant began preparations for leaving the home, unequivocally declaring his intention to do so. Plaintiff objected to his leaving without making such arrangements with reference to property owned by the parties as would enable her to maintain a home and to care for their children, a daughter aged 18 and a son aged 15.

The matter was discussed at some length and plaintiff's father, at her request, joined with her in attempting to dissuade defendant from his proposed action. It was, in substance, plaintiff's position, in which her father joined, that defendant should execute conveyances of his interest in the real estate of the parties, that he should remain in the home where a room would be furnished him, and that the parties, in order to prevent a scandal in the community that would result to the prejudice of their children, should continue to maintain outward appearances of the continuance of their family life. The exact nature of the agreement finally reached is in dispute.

In accordance with his understanding of what plaintiff and defendant had agreed should be done, the latter executed a quitclaim deed to plaintiff and the 2 children as grantees of his interest in the property in the city of Clare, Michigan, on which the fam-

ily lived, which the record indicates was worth approximately $10,000. Conveyance of this property had been made to plaintiff and defendant, as husband and wife, in 1947. It is not disputed that they held it as tenants by the entireties. They were also vendees under a land contract for the sale and purchase of other real estate in Clare, in which they had an equity at the time of their above-mentioned trouble of approximately $2,500. Defendant executed to plaintiff an assignment of all his interest in said contract. Possession of the deed and the assignment was given to plaintiff. Shortly thereafter she caused the deed to be recorded and placed the instruments of conveyance in a safety deposit box in a local bank, which box she rented in her own name.

For some time prior to the execution of the conveyances above-mentioned the parties had operated a restaurant on the lot on which they maintained their home, which faced on McEwan street in the city of Clare. The record indicates that defendant did the greater part of the necessary work in connection with the operation of the restaurant, and that he was assisted therein by the plaintiff. Presumably in accordance with the agreement made in November, 1949, they continued to carry on said business, and defendant lived in the home, for a period of several weeks. Because of an act on his part that greatly offended plaintiff she insisted that he leave the premises. He did so on or about January 22, 1950, and on the 3d of February, following, plaintiff filed suit for divorce, alleging extreme and repeated cruelty towards her on the part of defendant, and averring also that the parties had entered into a property settlement.

Defendant filed answer to the bill of complaint and also filed a cross bill alleging in substance that he

had executed the conveyances of his property interests because of fraudulent misrepresentations on the part of plaintiff and cross-defendant. In substance it was his claim as pleaded, and as asserted on the trial, that he was led by plaintiff's and cross-defendant's statements and conduct, including her apparent acquiescence in statements made by her father, to believe that if he would execute such conveyances as a guaranty of his good faith and would refrain from the improper conduct which had caused the difficulties between the parties she would undertake to forget his previous misconduct and resume a normal home life with him. Cross-plaintiff further claimed that such representations were made in bad faith, that in fact cross-defendant had no intention of again living with him as his wife, and that the primary purpose of such representations was to induce him to execute the conveyances. The cross bill also alleged that because of cross-defendant's failure to keep her promises the consideration for the transfers of property to her had failed. Cross-plaintiff asked that the deed and the assignment of the land contract be cancelled, that his interests in the properties in question be restored to him, and that the property belonging to the parties be divided by the court in such manner as might be found to be equitable. An answer to the cross bill was filed, denying that cross-defendant had been guilty of fraudulent conduct and denying that under the facts cross-plaintiff was entitled to the relief sought by him. Subsequently plaintiff filed an amendment to her original bill of complaint, alleging adultery on the part of the defendant as a ground for divorce. On the trial, however, no competent testimony to prove such charge was introduced.

The record filed in this Court indicates that the parties entered into a stipulation to the effect that their minor children should be added as defendants

and that the plaintiff and cross-defendant should be appointed their *guardian ad litem*. Presumably this was done because of the fact that they were named with her as grantees in the deed executed by cross-plaintiff purporting to convey his interest in the home. However, it does not appear that an answer, or other pleading, was filed on behalf of the children or that they were represented on the trial by counsel. The trial judge in his opinion stated in substance that the deed in question could not be set aside as to the children because they were not proper parties to the action, and there was no showing of any conspiracy to which they were parties, or of other improper conduct on their part. No claim is made that the children may be regarded as parties to the case in this Court.

Following presentation of proofs and arguments, the trial judge came to the conclusion that plaintiff was entitled to a decree of divorce on the grounds of extreme and repeated cruelty, but that defendant and cross-plaintiff was entitled to have the deed set aside and cancelled insofar as any interest was thereby conveyed to the plaintiff and cross-defendant, and that the assignment of the land contract should likewise be set aside. Following a detailed review of the facts the judge stated his conclusions from the evidence as follows:

"That it appears to the court when plaintiff obtained the deed and assignment of contract from the defendant that she had no intention of living together with the defendant as husband and wife. Further that the deed and assignment of contract were obtained from the defendant by the plaintiff by reason of the confidence which he placed in her as his wife and upon her entreaties, and because of her father, to stay and make a home for the family and to conduct the business and provide a livelihood for the family. The land was still to be occupied as a home-

stead by both of them and the business was to be operated by the defendant. Because of her entreaties and request to stay and do all the things that he did do it would appear that the parties would live together and conduct a home in name if not in substance; that the family would be intact and the livelihood and welfare financially of the family group would be assured. If he would have been advised at the time that she would not further live with him as his wife under any circumstances and would not make an honest and good faith effort to forgive him for his act of improper conduct, there is no question but what he would have refused to have signed the deed and the land contract.

"It is the court's opinion that her feelings were such that she did not entertain any desire to forgive him for his misconduct or to attempt in any manner or permit him to live with her as husband and wife at any time in the future when the deed and land contract were signed, which is contrary to her entreaties and representations to him. Having obtained the property under the agreement that the parties reside together in the homestead and that he operate the business, it does not appear equitable to permit the plaintiff to retain the property which she acquired from her husband."

Without reviewing the evidence in detail, we think it fully supports the holding of the trial court. The conclusion is fully justified that plaintiff and cross-defendant did not intend at the time of the negotiations leading up to the execution of the conveyances in question to resume marital relations with defendant and cross-plaintiff at any future time. She sought to obtain the property for the benefit of herself and her children, and quite possibly had also in mind preventing the domestic difficulties of the parties becoming generally known. Her conduct after she received the conveyances was such as to clearly indicate that she had neither affection nor

respect for her husband. Whether her attitude was justified by his conduct is not material in the consideration of the question whether he was induced by fraudulent conduct on her part to make conveyances of his interests in the properties. That he would not have made such conveyances except in reliance on his belief that her statements to him and her acts were made and done in good faith, is, we think, clearly shown by the record. He does not claim any agreement for reconveyances of the properties to him but, rather, that he was induced to execute the deed and the assignment because of the hope and belief on his part, induced by plaintiff and cross-defendant, that the home life of the parties might be re-established. Such conveyances were made to demonstrate his good faith in making assurances as to his future conduct, and as a guaranty against further violations of his duties with respect to the marital relation.

Plaintiff and cross-defendant has appealed from the decree entered by the trial court in accordance with the opinion filed. In urging that the defendant and cross-plaintiff was not entitled to have his conveyances set aside as to her, reliance is placed on the decision of this Court in *Wipfler* v. *Wipfler,* 153 Mich 18 (16 LRA NS 941), which followed the prior decision in *Dyer* v. *Skadan,* 128 Mich 348 (92 Am St Rep 461). In the *Wipfler Case,* however, there was no question of fraudulent conduct inducing the execution and delivery of the deeds in question. The matter at issue was whether there had in fact been a valid delivery resulting in the vesting of title in the grantee. The controlling question in *Dyer* v. *Skadan, supra,* was of a similar nature. In *Benore* v. *Benore,* 198 Mich 113, also cited by counsel for appellant, in which the plaintiff sought to have set aside a deed and bill of sale executed by him to defendant, his wife, it appears that the latter was deemed guilty

of inequitable conduct but there was no fraud on her part of such character to justify the setting aside of the conveyances, nor was relief sought on that ground.

In holding that the cross-plaintiff was entitled to have the conveyances set aside, the trial judge in the instant case cited *Judd* v. *Judd,* 192 Mich 198, which involved a factual situation analogous to that in the case at bar. After discussing the issues in the case and the claims of the parties, it was there said:

"These contentions of counsel must turn upon the question as to whether it can be said any fraud or deception was practiced by defendant in obtaining the conveyance. If the conveyance were a voluntary one, as contended by defendant, complainant is entitled to no relief, even though it be admitted that a parol trust was annexed to the conveyance. CL 1897, § 8835 (CL 1915, § 11571).* If complainant is right in his contention that the record shows that he was deceived by the defendant into the belief that she intended to continue the marriage relation with him, and if at the time she made the declarations and promises she intended to secure a divorce from him as soon as convenient, and thereby deprive him of all benefit in the property, it was a fraud upon him, and it is within the power of a court of equity to assist him. *Witbeck* v. *Witbeck,* 25 Mich 439; *Stiles* v. *Stiles,* 14 Mich 72; *Dickerson* v. *Dickerson,* 24 Neb 530 (39 NW 429, 8 Am St Rep 213); *Meldrum* v. *Meldrum,* 15 Colo 478 (24 P 1083, 11 LRA 65); *Fischer* v. *Fischer,* 245 Ill 426, 429 (92 NE 283); *Turner* v. *Turner,* 44 Mo 535; 21 Cyc, p 1301."

The *Judd Case* was cited with approval in *Stephenson* v. *Golden,* 279 Mich 710, 742. We think that the principles there discussed and followed are pertinent in the instant controversy.

---

* CL 1948, § 555.7 (Stat Ann § 26.57).—Reporter.

The decree of the trial court from which plaintiff and cross-defendant has appealed, after granting to her an absolute divorce, gave to her the household goods, furniture and belongings of the parties, and a 1/2 interest in the lot in the city of Clare on which the home of the parties and the restaurant business that had been conducted by them were located. Defendant and cross-plaintiff was expressly granted a 1/6 interest therein, and the decree further recited that the daughter and the son should each own a 1/6 interest, subject to the right of plaintiff and cross-defendant to use defendant and cross-plaintiff's 1/6 interest as long as she might desire, or until her remarriage, but not exceeding a period of 6 years. The right to such use was declared to be in lieu of an award of alimony.

Defendant and cross-plaintiff was given the vendee's interest under the contract for the purchase of the other real estate above referred to, in which the parties had an equity of approximately $2,500. He was ordered to pay plaintiff the sum of $150 by way of attorney fees and the further sum of $15 as costs, and he was assigned the interest of the parties in a 1941 Buick automobile. Plaintiff and cross-defendant was awarded all sums of money, which approximated $4,600 at the time of the trial, on deposit in postal savings or in any bank, whether in her name or in the names of both parties. Such award was made subject to the requirement that she pay to defendant and cross-plaintiff, presumably as his proportionate share of such moneys, the sum of $750 and execute an assignment of any interest that she might have in the automobile.

The conveyance by defendant and cross-plaintiff to his wife and 2 children of his interest in the home and restaurant property suggests a question not referred to on the trial in circuit court nor by counsel in their briefs on appeal. As noted, the property

was owned by plaintiff and defendant as tenants by the entireties. That the husband might have released his interest to the wife, thereby vesting her with full and complete title, is not open to question. See *Ash* v. *Ash,* 280 Mich 198, and prior decisions therein cited. CL 1948, § 557.101 (Stat Ann § 26.201). The effectiveness of an attempted conveyance by one tenant by the entireties to a stranger to the title is a matter of different character. In *Berman* v. *State Land Office Board,* 308 Mich 143, 144, it was said:

"This Court has repeatedly held that when title to real estate is vested in husband and wife by the entireties such an estate bars separate alienation by one spouse only. See *Eadus* v. *Hunter,* 249 Mich 190; *Nurmi* v. *Beardsley,* 275 Mich 328; *Long* v. *Earle,* 277 Mich 505."

See, also, *Schultz* v. *Silver,* 323 Mich 454, 459, and prior decisions there cited. As before noted, the children are not parties to the case before us. In consequence their rights may not be determined. In view of this aspect of the situation, and the further complications that might arise under the decree of the trial court if defendant and cross-plaintiff is left with the one-sixth interest granted to him, we think that the decree should be modified by granting to plaintiff and cross-defendant all the right, title, and interest of the parties to this suit in and to said property, subject, however, to the determination of the rights and claims of the children if such determination is sought in a proper proceeding. In view of such modification the amount of the cash payment that defendant and cross-plaintiff shall receive from the assets of the parties is increased from $750 to $2,250, with the sum of $750 payable at once by plaintiff and cross-defendant and the balance in equal monthly instalments of not less than $100 until the full amount is paid. The obligation to make such

payments shall constitute a lien on the interest of the plaintiff and cross-defendant in and to the home and restaurant property. The other provisions of the decree entered in the trial court are approved.

On behalf of appellant it is asserted that the trial judge was in error in refusing to allow the 18-year-old daughter of the parties to testify. The printed record contains no reference to the offer of such testimony, but from the original transcript filed in the office of the Clerk of this Court it appears that counsel for plaintiff and cross-defendant indicated his desire to call the daughter as a witness. She was not at the time in court. Counsel stated that she was absent from the city on a trip with her high school class, and asked for a continuance to the end that she might be available. No statement was made as to the nature of the testimony that she might give, except that counsel in answer to the questions of the court indicated that it would be "corroborative" and that it would not relate to the claim of adultery set out in the supplemental bill. The trial judge indicated a preference on his part that the children should not be asked to testify. The situation was, however, that the daughter was not present in court. There was no showing that her presence could not have been had at the time of the trial nor was there any showing, other than as above indicated, as to the matters concerning which she would be questioned if the court granted a continuance of the trial to a future date when she might be present. Under the circumstances the court was not in error in refusing the continuance. If the witness had been called to the stand, and her testimony relating merely to property matters had been rejected, an entirely different question would be presented.

A decree will enter in this Court in accordance with the foregoing conclusions, without costs to

either party, and the cause will be remanded to the trial court for enforcement of its provisions.

NORTH, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.