588 So.2d 192 (1991)
In the Matter of the ESTATE OF Ester Louie CHILDRESS, Deceased.
Dotsy C. NEWTON
v.
Rodney Wayne LONG.
No. 89-CA-0796.
Supreme Court of Mississippi.
September 18, 1991.
J.W. Kellum, Sumner, for appellant.
John W. Whitten, Jr., Breland & Hilburn, Sumner, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal by Ms. Dotsy C. Newton from the Tallahatchie County Chancery Court, Second Judicial District. In Ms. Newton's capacity as the executrix of the estate of her deceased father, Ester Louie Childress, an uncertainty arose over title to fifty-six acres of land located in Tallahatchie County.
In the Final Account and Petition to Close Estate, Ms. Newton indulged the court's assistance in determining ownership and quieting title to this property. Summonses were issued to several interested persons who might claim any interest in this land. Mr. Rodney Wayne Long, grandson of the decedent, filed an Answer to the Final Account and Petition acknowledging that he had no interest in the estate of Ester Louie Childress, but rather Mr. Long claimed that he owned a one-half interest in the fifty-six acres which should not be considered an asset of the estate. Ms. Newton filed an Answer and Cross Complaint in her individual capacity alleging that she was the sole owner of the entire fifty-six acres.
After a hearing on January 17, 1989, the chancellor entered a Final Decree which adjudged Rodney Wayne Long as the owner of an undivided one-half interest in this property. Being aggrieved by this judgment, Ms. Dotsy C. Newton in her individual capacity has appealed to this Court.
As the facts will reveal, this appeal requires this Court to answer a very specific question which has not been previously addressed in this factually analogous context.

I. DOES MISSISSIPPI REQUIRE A JOINT DEED BY BOTH HUSBAND AND WIFE OWNING PROPERTY AS TENANTS BY THE ENTIRETY IN ORDER TO SEVER THE ESTATE AND CREATE A REMAINDER INTEREST IN A THIRD PERSON; OR, CAN SEPARATE, INDIVIDUAL *193 DEEDS WHICH WERE EXECUTED, ACKNOWLEDGED AND RECORDED AT THE SAME TIME AND PLACE BE USED TO ACCOMPLISH THIS END?
We hold that separate deeds may be used to sever an estate in the entirety under a narrow range of circumstances whereby both spouses act in concert pursuant to a common purpose and without derogation of the other's right of survivorship. Therefore, we affirm the chancellor's decree adjudging Rodney Wayne Long as the owner of an undivided one-half interest to fifty-six acres of land in Tallahatchie County.

FACTS
Ester Louie and Florene Childress acquired approximately fifty-six acres of land in Tallahatchie County in 1944 as an estate in the entirety[1] with right of survivorship and not as tenants in common. The Childresses occupied this fifty-six acres as their homestead for a number of years. However, their marriage began to deteriorate, and Ester Louie moved away from the property, which had been their homestead, with no intention to return.[2] At some time prior to January 1971, Ester Louie and Florene reached an agreement whereby Florene would sue for divorce, and Ester Louie would relinquish his interest in this property. Furthermore, the couple agreed that Florene would have a life estate in the property, and upon her death, the estate would pass to their grandson, Rodney Wayne Long.
On January 15, 1971, Rodney Wayne Long drove Florene to the law office of Mr. John W. Whitten, Jr., in Sumner, where they met Ester Louie. The purpose of this meeting was to prepare the necessary deeds in order to give effect to the prior agreement that Ester Louie and Florene had reached. The grandson waited in the reception area while Ester Louie and Florene met with the attorney. According to Mr. Whitten's affidavit which is contained in this record, the agreement was that Florene was to have the undisturbed use and occupation of the fifty-six acre tract for her lifetime; and upon her death it was their wish that the entire fifty-six acres would succeed to their grandson, Rodney Wayne Long. Mr. Whitten concluded that the best way to accomplish this was by the execution of two separate warranty deeds.
The first warranty deed contained a conveyance of Ester Louie's interest to his wife for the term of her natural life with a remainder interest to the grandson.
I, ESTER LOUIE CHILDRESS do hereby sell, convey, warrant and deliver unto FLORENCE (sic) WALKER CHILDRESS, my wife, for the term of her natural life, with remainder as hereinafter recited, my undivided interest in and to the following described real property... .
* * * * * *
At the death of the said Florence (sic) Walker Childress, my said undivided interest ... shall go to my grandson, Rodney Wayne Long.
This deed was executed on the 15th day of January, 1971, and was recorded on January 25, 1971, at 1:50 p.m. The second *194 warranty deed was executed and acknowledged at the same time and bears a recordation time of five minutes later on January 25, 1971, at 1:55 p.m. This second deed was a conveyance by Florene Childress as grantor of an undivided one-half interest to Rodney Wayne Long but with a reservation of a life estate in the grantor.
I, Florence [sic] Walker Childress, do hereby convey, warrant and deliver unto my grandson, RODNEY WAYNE LONG, subject to the reservation of a life estate as hereinafter recited, my undivided one-half interest in and to the following described real property... .
* * * * * *
But reserving unto myself, the said Florence [sic] Walker Childress, a life estate in said property.
On the same day that the deeds were recorded, January 25, 1971, Florene filed her Bill for Divorce against Ester Louie who had since become a Florida resident. Therefore, the ownership arrangement regarding the property was clearly a division of the marital property in anticipation of the impending divorce. Ester Louie entered a waiver of process and did not contest the divorce action, and a divorce was granted approximately four months later on May 11, 1971.
The next key date in this scenario occurred eight years later on April 26, 1979, when the appellee, Rodney Wayne Long, executed a quitclaim deed of one-half of his remainderman interest in the fifty-six acres back to his grandfather.
I, ... Rodney Wayne Long, hereby remise, release and forever quit-claim to Ester Louie Childress one-half of my right, title and interest... .
Subsequent to his divorce from Florene in 1971, Ester Louie remarried and died testate on May 27, 1981. Ester Louie named his daughter, Dotsy Clark, appellant, as his executrix. Through a residuary clause in his will, Ester Louie named six devisees, all being his children, who would succeed to any interest that he still owned in this property at his death; Wilma Bledsoe, Hugh Allen Childress, Lacy Biles Childress, Stacy Giles Childress, Dotsy Clark Newton (appellant) and Louie Wesley Childress. Ester Louie's widow relinquished all of her right, title and claim to her deceased husband's estate by a quitclaim deed executed by her in February of 1988, to the six residuary devisees named in her husband's will.
Four years following the death of her ex-husband, Florene Childress quitclaimed all of her right, title and interest in the fifty-six acres to her daughter, Dotsy C. Newton. This deed was executed and recorded on July 30-31, 1985. Although the record is not developed on this fact, the briefs of counsel inform the Court that Florene Childress died in 1987. Upon Florene's death, any remainder interest that Rodney Wayne Long might own became present possessory subject to the rights of possible cotenants from the last will of Ester Louie Childress. Hence, Mr. Long's claim of a one-half interest in this property is in direct conflict with Ms. Newton's claim of complete ownership of the entire fifty-six acre estate.

DISCUSSION
The question raised on this appeal hinges on the validity of the two separate deeds executed by Mr. and Mrs. Childress in 1971, while husband and wife, in an attempt to sever the estate in the entirety. Specifically, the question before us is whether or not both spouses are required to sign as grantors in the same deed in order to sever an estate in the entirety; or can separate deeds by both spouses revealing mutual consent be used as a means to accomplish the same result. As an introduction to this discussion, a brief summary of the positions advanced by both parties is helpful.
Dotsy C. Newton argues that in order for a husband and wife to sever an estate in the entirety, both husband and wife must join in the same deed. This argument is rooted in the common law recognition that in an estate by the entirety, each spouse is seised of the whole or entirety and not a divisible part. 41 Am.Jur.2d Husband & Wife § 55 (1968). Thus, the *195 legal fiction is that there is but one estate held by only one "person"  the marriage itself. Therefore, any conveyance to a third party interest by one spouse alone would fail for the absence of a necessary grantor, recognizing that the grantor must consist of both husband and wife. Since the Childresses executed separate deeds in 1971 to Rodney Wayne Long rather than a joint deed, Dotsy C. Newton contends that the estate in the entirety was never severed and that the execution of separate deeds was a nullity. This left the right of survivorship intact;[3] and when Florene Childress survived Ester Louie, she became possessed of the whole. Consequently, Dotsy C. Newton claims that she is the successor in interest to this property as grantee of a quitclaim deed from her mother in July of 1985.
The appellee, Rodney Wayne Long, has a simple response. He argues that it would be ridiculous and foolish to require Florene Childress to join in a deed to herself in order to sever the entirety. Mr. Long argues that an estate in the entirety can be severed by the consent of both spouses to terminate the relationship just as joint tenancies can be severed by mutual agreement or contract. 41 Am.Jur.2d Husband & Wife § 71 (1968). Mr. Long notes that the deeds were prepared by the same attorney at the same time and place and were recorded within five minutes of each other in full anticipation of a divorce. Mr. Long argues that all of these factors unequivocally reveal mutual consent to sever the entirety in what amounted to a single transaction, albeit the execution of separate deeds. If the execution of separate deeds successfully severed the entirety and conveyed a remainderman's interest to Mr. Long, then he would own an undivided one-half interest along with the devisees under Ester Louie's will who would own the remaining undivided one-half interest.
In an early case of Hemingway v. Scales, Mr. Scales died insolvent, and the probate court decreed that the estate be sold for the payment of his debts. Hemingway v. Scales, 42 Miss. 1 (1868).[4] In Hemingway, this Court described a tenancy by the entirety.
The husband and the wife are seized of the entirety, and the survivor takes the whole; and during their joint lives neither of them can alien so as to bind the other... . In such a case the wife has no separate estate, but is seized, with the husband, of the entirety. Neither of them having any separate or severable part or portion, but the two, as one in law, holding the entire estate, neither can sell without the consent of the other; and the survivor takes the whole.
Hemingway v. Scales, 42 Miss. 1, 17 (1868). (emphasis added).
In McDuff v. Beauchamp, Mr. and Mrs. McDuff owned an estate in the entirety which they alleged as having been obtained by the separate and exclusive funds of Mrs. McDuff. McDuff v. Beauchamp, 50 Miss. 531, 534 (1874). Mrs. McDuff's brother induced her and her husband to substitute their obligation and mortgage on this land in order to relieve a mortgage that the brother owed to the local school fund. 50 Miss. at 534. Foreclosure followed, and Mrs. McDuff argued that she alone was the equitable owner of this property, constituting a separate estate in her. Id. This Court ruled against Mrs. McDuff and upheld the decree of foreclosure. 50 Miss. at 539. The McDuff Court noted that while an estate in the entirety can be alienated by a joint deed, it stopped short of mandating a joint conveyance in all instances.

*196 Both being seized of the entirety, neither could alien without the consent of the other, and the survivor would take the whole... . One of the incidents of the estate is that it can only be alienated by the joint act of the husband and wife. We think that the mortgage made by them, to the trustee of the common school fund, is valid. A separate conveyance by the husband would pass no present interest to an alienee... . It would follow then that as at the common law an alienation of the estate of entirety could be made by husband and wife; it can be done here by a joint deed properly sealed and acknowledged.
McDuff v. Beauchamp, 50 Miss. 531, 535-36 (1874).
In the case of Cuevas v. Cuevas, Mr. Cuevas attempted to unilaterally transfer an estate held in the entirety to his girlfriend. Cuevas v. Cuevas, 191 So.2d 843 (Miss. 1966). In Cuevas, we recognized the common law rule that an estate in the entirety may not be severed by the act of one tenant alone and noted that the reason for this rule is well justified as a means to protect the right of survivorship of one spouse from the improvidence of the other spousal tenant. Cuevas, 191 So.2d at 846-47. Additionally, we quoted from Thompson, Real Property.
While the marriage exists neither husband nor wife can sever this title so as to defeat or prejudice the right of survivorship in the other... . Ordinarily a conveyance executed by only one of the tenants in entirety is inoperative and ineffective to pass title.
Cuevas, 191 So.2d at 847 (quoting 4 Thompson, Real Property, § 1792 at 102 (1961)).
In a more recent visit to this issue, we again recognized the rule as a means to safeguard the right of survivorship.
An estate by entirety may exist only in a husband and wife and may not be terminated by the unilateral action of one of them because they take by the entireties and not by the moieties. While the marriage exists, neither husband nor wife can sever this title so as to defeat or prejudice the right of survivorship in the other, and a conveyance executed by only one of them does not pass title. [citations to Cuevas, McDuff and Hemingway omitted].
Ayers v. Petro, 417 So.2d 912, 914 (Miss. 1982).
In Shepherd v. Shepherd, we held that, upon divorce, a husband and wife owning property as tenants by the entirety become joint tenants and not tenants in common. Shepherd v. Shepherd, 336 So.2d 497, 499 (Miss. 1976). This was a strong minority position adopted by this Court. Ayers v. Petro, 417 So.2d 912, 914 n. 2 (Miss. 1982). While Shepherd is not directly applicable to the case at bar, it further reveals a very protected and guarded position for the right of survivorship.
Mr. Long advances a Pennsylvania case as primary support for his argument. Runco v. Ostroski, 361 Pa. 593, 65 A.2d 399 (1949). John Gapinski conveyed to his wife, without joining her as grantor, his interest of an estate held in the entirety; and the question in Runco was whether real property held by the entireties could be partitioned by a conveyance from one spouse to the other who accepted it, paid consideration and recorded the deed. Runco, 65 A.2d at 399. The lower court in applying the common law rule held that the husband's attempted conveyance to his wife was ineffective to sever the entirety, but the Pennsylvania Supreme Court reversed and adopted a more pragmatic approach. Id. at 400-401. "Our cases show that the rigidity of the common law concept of tenancy by the entireties has yielded to the demands of modern life." Id. at 400.
An important consideration which the Pennsylvania Court recognized as significant was that the grantee spouse was benefitted by the transfer. Runco v. Ostroski, 361 Pa. 593, 65 A.2d 399, 401 (Pa. 1949) "[T]he conveyance by one spouse to the other is a fact supporting the inference that the grantee spouse assents to the act inuring to her benefit." 65 A.2d at 401. Furthermore, the facts of the case clearly showed that the wife consented to the termination of the entirety, and it would be *197 futile to require the wife to join in a deed to herself. Id.
The payment of consideration, delivery and recording of the deed constitute such joint action and mutual assent as are required by our cases to destroy the entirety. To require the formal joinder of the wife in conveying to herself would be wholly unnecessary.
Runco, 65 A.2d at 401.
North Carolina has applied the principle of estoppel in an analogous case. Where a husband had deeded property held in the entirety to his wife and then survived his wife, the husband and those in privity with him were estopped from claiming any interest in the property. Keel v. Bailey, 224 N.C. 447, 31 S.E.2d 362, 363 (1944). See Jones v. Lewis, 243 N.C. 259, 90 S.E.2d 547, 550 (1955) (conveyance from one spouse to other of estate held by entirety is valid as estoppel).
The Arkansas position is that one spouse can directly convey to the other his interest in an estate held by them as tenants by the entirety. Ryan v. Roop, 214 Ark. 699, 217 S.W.2d 916, 917 (1949). Also, a single conveyance by a husband to the wife and minor children was held valid where the wife accepted the property and took charge for the benefit of herself and the children. Moore v. Moore, 170 Ark. 1194, 281 S.W. 657, 660 (1926). Massachusetts allows one spouse to convey directly to the other without the necessity of a joint deed or straw person. Hale v. Hale, 332 Mass. 329, 125 N.E.2d 142, 144 (1955). Michigan holds that an estate in the entirety bars separate alienation by one spouse only, but the husband can release his full interest to his wife, thereby vesting her with complete title. Hearns v. Hearns, 333 Mich. 423, 53 N.W.2d 315, 320 (1952). In New Jersey, either spouse may sell the life interest to the other, but neither can dispose of the remainder without the consent or assent of the other. Craig v. Craig, 25 N.J. Super. 226, 95 A.2d 767, 768 (Sup.Ct.Chan.Div. N.J. 1953). See Donvito v. Criswell, 1 Ohio App.3d 53, 439 N.E.2d 467, 473 (Ohio Ct. App. 1982) (entirety can be severed by mutual assent).
In the deed from Ester Louie to Florene, the former relinquished all of his present possessory interests in the estate to Florene. Florene was guaranteed sole, undisturbed possession of the estate for the remainder of her natural life. From a common sense, practical approach, this relinquishment of Ester Louie's present possessory rights benefitted Florene. She now owned the right to occupy the whole without interference from any other ownership interest during her lifetime. Her undisturbed possession of the estate would continue without regard to which tenant died first. Therefore, we conclude that the grantee spouse suffered no detriment to her right of survivorship in the case sub judice.
Further, we find the facts of the case at bar similar to the facts of Runco in that Florene clearly consented to the termination of the entirety. The separate deeds were prepared, executed and acknowledged at the same time and place; and the deeds were recorded ten days later within five minutes of each other when Florene filed her Bill for Divorce. Reading the instruments together as a single transaction, all parties fully contemplated and agreed that Ester Louie would relinquish his interest in the estate, Florene would have a life estate, and upon Florene's death the estate would pass to Rodney Wayne Long. This agreement regarding disposition of the property was further memorialized by the acceptance of deeds by Florene Childress and Rodney Wayne Long, the life tenant and remainderman, respectively. Additionally, the facts at bar have the added dimension that the parties executed the deeds in full anticipation of an impending divorce and the need to come to some agreement regarding the marital property.
We intimate no opinion whatsoever regarding the wisdom of executing separate deeds or the preferred approach to be taken by a couple desiring to sever an estate by the entirety. Furthermore, while we are reluctant to speculate or second guess the approach taken in this case, we find that a careful review of the record reveals that a major contributor to this dispute *198 rests in the mistaken view that spouses owning property in the entirety are seised of some undivided half interest. We caution that such a view is clearly contrary to an estate in the entirety where each spouse is seised of the whole estate and not an undivided half interest. We merely find that under the facts of this case, no violence is done to well settled law in this state which extends due regard to the right of survivorship and considerable protection against unilateral action by one tenant to the detriment of the other spousal tenant. Therefore, we conclude that the stringent requirements of the common law in this instance should give way to a practical application of a plan by two spouses to dispose of marital property incident to a divorce.
Accordingly, we affirm the decree of the Tallahatchie County Chancery Court, Second Judicial District, entered in this case on May 18, 1989.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, PITTMAN and McRAE, JJ., concur.
PRATHER, J., dissents by separate written opinion, joined by SULLIVAN, J.
ROBERTSON, J., concurs by separate written opinion, joined by PITTMAN and BANKS, JJ.
PRATHER, Justice, dissenting:
This case presents an analysis of a type of concurrent ownership of real property  the tenancy by the entirety  but more specifically a discussion of how such a tenancy may be terminated.

I.
At the outset, it is important that a historical perspective be given to the subject. At common law, the tenancy by the entirety was a peculiar kind of ownership of realty between husband and wife that resembled a joint tenancy, but was distinguishable from it. Ayers v. Petro, 417 So.2d 912, 914 (Miss. 1982). Cornelius J. Moynihan in his treatise, Introduction to the Law of Real Property, West Publishing Company, Revised Edition, (1962), p. 229 described the distinctions thusly:
[J]oint tenants were seized of a share and of the whole ..., but tenants by the entirety were seized of the whole and not of a share... .
The footnote appended to this statement expresses our dismay with this statement and reads:
If you find this concept difficult to grasp, you are not alone. In his dissenting opinion in King v. Greene, 30 N.J. 395, 413, 153 A.2d 49, 60 (1959) Chief Justice Weintraub had this to say: "The estate by the entirety is a remnant of other times. It rests upon the fiction of a oneness of husband and wife. Neither owns a separate distinct interest in the fee; rather each and both as an entity own the entire interest. Neither takes anything by survivorship; there is nothing to pass because the survivor always had the entirety. To me the conception is quite incomprehensible."
One of the most important characteristics of this type of concurrent ownership was, not only the right of survivorship, but more importantly, an "indestructible" right of survivorship. Moynihan, Real Property at 229. Neither spouse alone could defeat the right of survivorship of the other spouse.
The common law concept of tenancy by the entirety has been met by various responses in the United States, with some states even abolishing this estate. Many other states, including Mississippi, have limited the entirety estate by statutory enactment to require language of sufficient specificity to evidence an intent to create an estate by the entirety. The Mississippi statute is as follows:
All conveyances or devises of land made to two or more persons, including conveyances or devises to husband and wife, shall be construed to create estates in common and not in joint tenancy or entirety, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or entirety with the right *199 of survivorship. But an estate in joint tenancy or entirety with right of survivorship may be created by such conveyance from the owner or owners to himself, themselves or others, or to himself, themselves and others.
This section shall not apply to mortgages or devises or to conveyances made in trust.
Miss. Code Ann. § 89-1-7 (1972); Welborn v. Henry, 252 So.2d 779 (Miss. 1971). The Mississippi judicial interpretations that have followed this enactment have maintained the concept of the "indestructible right of survivorship." Ayers v. Petro, 417 So.2d at 914 (a purported conveyance by only one spouse of an estate by the entirety is insufficient to pass title); Cuevas v. Cuevas, 191 So.2d 843, 846-47 (Miss. 1966) (a tenancy by the entirety may not be severed or destroyed by the act of one of the tenants); McDuff v. Beauchamp, 50 Miss. 531 (1874); Hemingway v. Scales, 42 Miss. 1 (1868) (husband and wife are seized of the entirety; during their lives, neither can alienate it so as to bind the other).
The concept of the inalienability of the tenancy by the entirety has been logically incorporated into other statutory procedures as well. Involuntary partition of real property is not available to tenants by the entirety, as distinguished from joint tenants or tenants in common. Miss. Code Ann. § 11-21-3 (1972). Nor may one spouse validly convey homestead-exempted property unless signed by the other spouse, with certain exceptions. Miss. Code Ann. § 89-1-29 (Supp. 1990); Yazoo Lumber Co. v. Clark, 95 Miss. 244, 48 So. 516 (1909) (deed to homestead by husband alone is void).

II.
Termination of a tenancy by the entirety may be accomplished in several ways. The most obvious method of termination is by death of one of the spouses, and the property is vested in the survivor. 4 Thompson, Commentaries on the Modern Law of Real Property, § 1792, (1979); Burby, Handbook of the Law of Real Property, § 95, p. 227 (3d ed. 1965). The entirety passes by unity of the spouses, not by survivorship. Kahn v. Kahn, 43 N.Y.2d 203, 401 N.Y.S.2d 47, 371 N.E.2d 809 (1977). In DeGolyer v. Schutt, 40 A.D.2d 943, 339 N.Y.S.2d 240 (N.Y. App. Div. 1972), the Court held only death or divorce terminates entireties.
Divorce of the spouses is another method of termination of the entireties. Burby, supra, at 1792. In Mississippi, which does not follow the majority view, upon dissolution of a marriage by divorce, the owners become joint tenants with rights of survivorship, and not tenants in common. Shepherd v. Shepherd, 336 So.2d 497, 499 (Miss. 1976).
The joint execution of a deed may terminate the tenancy. Losey v. Losey, 207 So.2d 283, 284 (Fla. Dist. Ct. App. 1968); Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925); English v. English, 66 Fla. 427, 63 So. 822 (1913); contra Runco v. Ostroski, 361 Pa. 593, 65 A.2d 399 (1949), cited by the majority opinion. Mississippi has followed the rule that a unilateral action of one spouse may not terminate the entirety. Ayers, 417 So.2d at 914; Cuevas, 191 So.2d at 846 (citing authorities therein); Hemingway v. Scales, 42 Miss. 1 (1868); See also 4 Thompson, Real Property, § 1792 (1979).
It has also been suggested that Mississippi caselaw holds that the entirety may be terminated by contract or agreement of the tenants by the entirety. In Shepherd v. Shepherd, 336 So.2d 497, 499 (Miss. 1976), this Court stated:
Appellant also argues that the parties intended that the estate by entirety be terminated. While it is true that a joint tenancy may be terminated by contract or agreement of the joint tenants as between themselves or may be deemed to have been terminated by implication when the parties enter into a valid contract containing provisions inconsistent with the continuance of the joint tenancy; however, there is no evidence in this case to support the claim the parties intended for the estate in entirety to be dissolved. (Emphasis added).
However, this case is no authority for the proposition that an entirety estate may be *200 terminated by contract or agreement. The above-quoted statement refers to joint tenants, not entirety tenants. No factual situation has been litigated and affirmed by this Court severing an entirety estate by contract or agreement in this jurisdiction, except by a joint deed of the tenants.

III.
This review of the common law and statutory history of tenancy by the entirety brings us to the issue in the case sub judice. A statement of the facts is set out in the majority opinion reciting that an agreement was reached between Ester Louie and Florene Childress regarding their entirety estate. According to the affidavit of their attorney, the Childresses agreed that (1) the wife was to have the undisturbed use and occupancy of the fifty-six (56) acres for her lifetime, and (2) the entire remainder interest was to go to their grandson, Rodney Wayne Long. It is my view that the majority opinion is inferring an intent to sever the tenancy from two separate documents on self-serving testimony of the attorney who prepared the deeds and now represents one of the parties in this litigation to uphold them.
Mississippi law has always held that a severance or transfer of an entirety estate must be by a joint deed. Our case law is clear and unequivocal; the procedure has been set forth over a century. The majority is abandoning well-established procedure in favor of the presumed intent of these deceased grantors.
The majority opinion is abandoning precedent, but without defined limits. This holding creates uncertainty as to the status of a tenancy by the entirety for the future. These two deeds were drawn by one attorney. What would this Court hold if two attorneys drew two separate deeds? Or if the deeds were executed two hours apart, or two days? What future effect will today's holding have upon homestead deeds? Will we abandon a joint deed of homestead property to transfer title in our next decision? The status of a tenancy by the entirety is made uncertain by the majority opinion and could also have "serious ramifications in other areas of the law, such as tax, bankruptcy, access by creditors, alienability, and divorce." Property-Tenancy By The Entirety-Effect Of Divorce On Tenancy By The Entirety In Mississippi, 48 Miss.L.J. 352, 359.
I am of the view that our well-established law on severance of a tenancy by the entirety for failure to execute a joint deed has been violated here. Neither do I agree that the facts support a mutual agreement or consent. For consistency and stability in land law, I would hold that the two 1971 deeds are void.

IV.
The second reason that I would reverse the chancellor's holding rests on the premise that the separate deeds purported to convey homestead property. Miss. Code Ann. § 89-1-29 (Supp. 1990), requires the joint conveyance of both owners of homestead property to transfer title. This Court has held a conveyance without joint signatures of both husband and wife is void. Hendry v. Hendry, 300 So.2d 147, 149 (Miss. 1974).
The chancellor's findings of fact stated that "the parties were, in fact, not occupying the fifty-six (56) acre tract as their homestead on January 15, 1971; that they were living apart; that Florene was living on the place but that Louie had left and been separated from his wife for a period of more than a year." (Emphasis added).
The emphasized language indicates to me that the property was homestead-exempted property where the wife was living. The husband had separated from her (but not divorced) and the property was not their (as opposed to her) homestead. The finding of fact does not specifically address whether the land was subject to homestead exemption. In due deference to the chancellor, the parties stipulated the issue here to be the validity of the 1971 deeds. Homestead was not in issue. I suggest that there is serious doubt as to the validity of the deeds on the homestead question.

V.
I respectfully dissent and would hold that the two 1971 deeds were void. From *201 that holding, I would suggest that after the divorce of Mr. and Mrs. Childress, their ownership was converted by operation of law to a joint tenancy with rights of survivorship. Shepherd, 336 So.2d at 499. Upon the death of Mr. Childress in 1981, Florence, the survivor, was vested with the entire estate.
Dotsy Newton claims ownership of the entire property by virtue of a quitclaim deed from Florence to her in 1985. If my position were to have prevailed, I would have remanded the case to the Chancery Court for the purpose of determining the validity of this deed and of the defenses raised to it by all parties necessary for a just adjudication. For these reasons, I respectfully dissent from the majority opinion.
SULLIVAN, J., joins this opinion.
ROBERTSON, Justice, concurring:
A tenancy by the entirety is a facility our law has long afforded married persons to arrange, if they wish, the incidents of ownership of their real property so that each may simultaneously hold the whole. Justice Prather describes the history of the estate in her separate opinion in a way I find unexceptionable, as does Presiding Justice Dan M. Lee, speaking for the Court. That the estate by the entirety has been abolished elsewhere and may be one of those anachronisms that exists by "blind imitation of the past"[1] need not detain us, as no one today argues we can or should abolish it.
The point for the moment is that severance of an estate by the entirety is a matter that is and always been controlled by formalities. Death terminates the estate, but we are not concerned with that today. Divorce may sever it, as well, but Florene Walker Childress and Ester Louie Childress were not divorced on January 15, 1971, when they exchanged the deeds in issue. Past death and divorce, the only procedure our law accepts as effective to terminate a tenancy by the entirety is joint execution of a deed. Conversely, unilateral action of one spouse is without effect. Ayres v. Petro, 417 So.2d 912, 914 (Miss. 1982). While Shepherd v. Shepherd, 336 So.2d 497 (Miss. 1976) fuzzes things up a bit, the dicta today's majority cites from that case still seems to suggest each party must sign and deliver the same writing, albeit Shepherd refers to that writing as a "contract or agreement" rather than a "deed," Shepherd, 336 So.2d at 499. This is consistent with our long-standing rule.
The majority says it is clear the parties intended to sever the estate by the entirety, and no doubt this is so. The argument proves too much. A man may make a will and have it witnessed by only one person, and we may find that he intended the instrument as his will, but I doubt anyone would suggest we honor it, because it had not been made and subscribed according to the formalities the law demands. Miss. Code § 91-5-1 (Supp. 1991). Insistence upon such formalities will, from time to time, disappoint a person's preferences, but this is always true when the law prescribes a form for a person's achieving a desired end. The very reason we opt for such forms  in contracts, deeds, wills, and otherwise  is that they are thought necessary that the parties know what they have done and with what effect and that third parties and courts thereafter may be sure what they have done. They are like rules of evidence and as such are by their nature arbitrary, but this has never been seen a reason for non-enforcement. Cf. Williams v. Mason, 556 So.2d 1045, 1048-49 (Miss. 1990); Bourke v. Callanan, 160 Mass. 195, 197, 35 N.E. 460, 461 (1893). Nor is it admissible ex post facto that we should have more intelligent formalities.
There is a narrower dimension, personal to the parties and their predecessors in interest. On May 11, 1981, the Chancery Court of the Second Judicial District of Tallahatchie County, Mississippi, decreed Florene Walker Childress and Ester Louie Childress divorced and the bonds of matrimony theretofore existing between them were held for naught. I do not doubt that from and after that date, May 12, 1971, to *202 be safe, the Childresses could have executed and delivered in exchange warranty deeds otherwise verbatim to those here before us with full effect. This should suggest an analogous principle familiar to all lawyers, to-wit: if a grantor having no title to land purports to convey it by a warranty deed, he will be estopped to show that at the time of the deed he had no title to convey. If he later acquires the title, his after-acquired title will pass to the grantee without further conveyance by way of estoppel. See Burby, The Law of Real Property, 320 (3d Ed. 1965). We call this principle estoppel by deed and have long accepted it in this state. Perkins v. Kerby, 308 So.2d 914 (Miss. 1975).
On January 15, 1971, the Childresses had no legal power to destroy their estate by the entirety except they conform to the law's formalities. They nevertheless executed and delivered warranty deeds to each other which failed to satisfy the rule of joint execution. This they did contemplating divorce. Had they been divorced at the time, no one would argue these deeds should not be accepted and enforced according to their tenor, for the law finds spent at divorce the force of its formality. Divorce removes the rule requiring joint execution of a single instrument to sever an estate by the entirety.
I would hold that, once the Childresses were divorced on May 11, 1971, they had acquired a legal status which would have thereafter permitted them to execute and exchange the deeds in question and with full effect according to their tenor. I would hold that, upon their divorce, the Childresses satisfied the only condition standing between them and the effectiveness of their respective warranty deeds, and that each and his or her successors in interest became thereafter estopped to deny their respective deeds.
PITTMAN and BANKS, JJ., concur.
NOTES
[1] Conveyances or devises of land to two or more persons, including spouses, create tenancies in common unless it is clear from the instrument of conveyance or devise that a joint tenancy or tenancy by the entirety with right of survivorship was intended. Miss. Code Ann. § 89-1-7 (1972). In the instant case, Ester Louie and Florene Childress acquired this property as, "an estate in entirety, with the right of survivorship, and not as tenants in common... ." Record at 34.
[2] The question before the Court is strictly one of real property, and specifically we are concerned with severance of a tenancy by the entirety. The posture of this case makes it unnecessary that we consider the application of homestead laws to the facts presented on this appeal. However, one should be mindful that homestead laws will often carry considerable importance when spouses attempt to convey homestead property regardless of the type of tenancy between the spouses. See Miss. Code Ann. § 89-1-29 (Supp. 1990) (conveyance of homestead by spouses still living together not valid unless both spouses sign deed); see also Hendry v. Hendry, 300 So.2d 147, 149 (Miss. 1974) (deed void where wife did not sign); Philan v. Turner, 195 Miss. 172, 13 So.2d 819, 821 (1943) (spouse who abandons homestead has no veto power over conveyance by other spouse).
[3] Spouses owning property in the entirety become joint tenants upon divorce leaving the right of survivorship undisturbed. Shepherd v. Shepherd, 336 So.2d 497, 499 (Miss. 1976).
[4] The cases cited in volume 42 Miss. were the opinions of a tribunal appointed by the military satrap and have no binding authority but must be regarded as res judicata. Lusby v. Kansas City, Memphis & Birmingham Railroad Co., 73 Miss. 360, 19 So. 239 (1896). However, the rationale of Hemingway which we rely upon in this case has received full endorsement by this Court on a number of occasions. See Ayers v. Petro, 417 So.2d 912, 914 (Miss. 1982); Cuevas v. Cuevas, 191 So.2d 843, 850 (Miss. 1966); McDuff v. Beauchamp, 50 Miss. 531, 535 (1874).
[1] Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897).